NAME _Charles Devon Garrett_

PRISON NUMBER _B J9946_

CURRENT ADDRESS OR PLACE OF CONFINEMENT _P.O. Box 921 C-5  131_

CITY, STATE, ZIP CODE _Imperial, Ca 92251_

**FILED**

Jun 10 2022

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY ___s/ shelly___ DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

_In re Charles Devon Garrett_,
(FULL NAME OF PETITIONER)

PETITIONER

v.

_Shawn Moore_,
(NAME OF WARDEN, SUPERINTENDENT, JAILOR, OR AUTHORIZED
PERSON HAVING CUSTODY OF PETITIONER (E.G., DIRECTOR OF THE
CALIFORNIA DEPARTMENT OF CORRECTIONS))

RESPONDENT

and

_The Attorney General of CA_,
The Attorney General of the State of
California, Additional Respondent.

Civil No **'22CV0864 JLS  BGS**
(TO BE FILLED IN BY CLERK OF U.S. DISTRICT COURT)

PETITION FOR WRIT OF HABEAS CORPUS

UNDER 28 U.S.C. § 2254
BY A PERSON IN STATE CUSTODY

1. Name and location of the court that entered the judgment of conviction under attack: _____
   _Superior County County Of Fresno  1100 Van Ness, Fresno, Ca 93724_

2. Date of judgment of conviction: _July 26, 2019 sentenced, and convicted March 5, 2019_

3. Trial court case number of the judgment of conviction being challenged: _____
   _F18903146_

4. Length of sentence: _29 years_

CIV 68 (Rev. Oct. 2015)

5.  Sentence start date and projected release date: July 26, 2019 , August 27, 2041

6.  Offense(s) for which you were convicted or pleaded guilty (all counts): Attempted Murder PC/664/187(a), Assault with semiautomatic PC 245(b), Discharging Firearm PC 246.3(a), PC 29500(a)(1), PC 12022.53(c), PC 12022.5(a)

7.  What was your plea? (CHECK ONE)
    (a) Not guilty       ☑
    (b) Guilty           ☐
    (c) Nolo contendere  ☐

8.  If you pleaded not guilty, what kind of trial did you have? (CHECK ONE)
    (a) Jury       ☑
    (b) Judge only ☐

9.  Did you testify at the trial?
    ☑ Yes  ☐ No

## DIRECT APPEAL

10. Did you appeal from the judgment of conviction in the California Court of Appeal?
    ☑ Yes  ☐ No

11. If you appealed in the California Court of Appeal, answer the following:
    (a) Result: Affirmed
    (b) Date of result (if known): June 14, 2021
    (c) Case number and citation (if known): F079711

    (d) Grounds raised on direct appeal: Ineffective Assistance of counsel, Prosecutorial Misconduct, and Erroneous Jury Instruction

12. If you sought further direct review of the decision on appeal by the California Supreme Court (e.g., a Petition for Review), please answer the following:   N/A
    (a) Result: _____
    (b) Date of result (if known): _____
    (c) Case number and citation (if known): _____

    (d) Grounds raised: _____

13. If you filed a petition for certiorari in the <u>United States Supreme Court</u>, please answer the following with respect to that petition:
   (a) Result: _____ *N/A* _____
   (b) Date of result (if known): _____
   (c) Case number and citation (if known): _____
   _____
   (d) Grounds raised: _____
   _____
   _____
   _____
   _____

## COLLATERAL REVIEW IN STATE COURT

14. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the <u>California Superior Court</u>?
   ☑ Yes  ☐ No

15. If your answer to #14 was "Yes," give the following information:
   (a) <u>California Superior Court</u> Case Number (if known): 21CRWR686077
   (b) Nature of proceeding: Petitioner has filed multiple habeas petitions and all of the petitions were Denied.
   (c) Grounds raised: Judicial Bias, Prosecutorial Misconduct, and Ineffective Assistance of counsel.
   _____
   _____

   (d) Did you receive an evidentiary hearing on your petition, application or motion?
   ☐ Yes  ☑ No
   (e) Result: _____
   (f) Date of result (if known): _____

16. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the <u>California Court of Appeal</u>?
   ☑ Yes  ☐ No

17. If your answer to #16 was "Yes," give the following information:

    (a) California Court of Appeal Case Number (if known): F083637

    (b) Nature of proceeding: Denied

    (c) Grounds raised: Disqualification of the honorable Judge Cardoza, lack of Jurisdiction. Then Petitioner amended his habeas corpus petition with four previously denied habeas corpus petitions, requesting the court to consolidate the petitions.

    (d) Did you receive an evidentiary hearing on your petition, application or motion?
    ☐ Yes ☑ No

    (e) Result: _____

    (f) Date of result (if known): _____

18. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the California Supreme Court?
☑ Yes ☐ No

19. If your answer to #18 was "Yes," give the following information:

    (a) California Supreme Court Case Number (if known): S274097

    (b) Nature of proceeding: Denied Petition for Review

    (c) Grounds raised: Denial of Due Process right to a fair Impartial Judge, Constructive denial of counsel, cumulative effect of trial errors denied due process. (Petitioner summarized the grounds).

    (d) Did you receive an evidentiary hearing on your petition, application or motion?
    ☐ Yes ☑ No

    (e) Result: _____

    (f) Date of result (if known): _____

20. If you did *not* file a petition, application or motion (e.g., a Petition for Review or a Petition for Writ of Habeas Corpus) with the <u>California Supreme Court</u>, containing the grounds raised in this federal Petition, explain briefly why you did not:

_____

_____

_____

_____

## COLLATERAL REVIEW IN FEDERAL COURT

21. Is this your first federal petition for writ of habeas corpus challenging this conviction?
    ☑ Yes  ☐ No      (If "Yes" Skip to #22)
    (a) If no, in what federal court was the prior action filed? _____
    (i) What was the prior case number? _____
    (ii) Was the prior action (Check One):
        ☐ Denied on the merits?
        ☐ Dismissed for procedural reasons?
    (iii) Date of decision: _____
    (b) Were any of the issues in this current petition also raised in the prior federal petition?
        ☐ Yes  ☐ No
    (c) If the prior case was denied on the merits, has the Ninth Circuit Court of Appeals given you permission to file this second or successive petition?
        ☐ Yes  ☐ No

<u>Caution:</u>
- <u>Exhaustion of State Court Remedies:</u>  In order to proceed in federal court you must ordinarily first exhaust your state court remedies by presenting your claims to the California Supreme Court.  Even if you have exhausted some grounds by raising them before the California Supreme Court, you must first present *all* grounds to the California Supreme Court before raising them in your federal Petition.

- <u>Single Petition:</u>  If you do not present all your grounds for challenging a specific judgment in this Petition, you may not be able to present additional grounds challenging the same judgment at a later date.

- <u>Factual Specificity:</u>  You must state facts, not conclusions, in support of your grounds.  For example, if you are claiming incompetence of counsel you must say what your attorney did wrong or failed to do.  A rule of thumb to follow is — state who did exactly what to violate your federal constitutional rights at what time or place.

## GROUNDS FOR RELIEF

22. State *concisely* every ground on which you claim that you are being held in violation of the constitution, law or treaties of the United States. Summarize *briefly* the facts supporting each ground. (e.g. what happened during the state proceedings that you contend resulted in a violation of the constitution, law or treaties of the United States.) If necessary, you may attach pages stating additional grounds and/or facts supporting each ground.

(a) GROUND ONE: ___See attached___

_____

_____

Supporting FACTS: _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Did you raise GROUND ONE in the California Supreme Court?

☐ Yes ☑ No.

If yes, answer the following:

(1)  Nature of proceeding (i.e., petition for review, habeas petition): _____

(2)  Case number or citation: _____

(3)  Result (attach a copy of the court's opinion or order if available): _____

(b) GROUND TWO: _See attached_

Supporting FACTS: _____

Did you raise GROUND TWO in the California Supreme Court?

☑ Yes ☐ No.

If yes, answer the following:

(1) Nature of proceeding (i.e., petition for review, habeas petition): _Petition for Review_

(2) Case number or citation: _S274097_

(3) Result (attach a copy of the court's opinion or order if available): _Denied_

(c) GROUND THREE: _See attached_ _____

_____

_____

_____

Supporting FACTS: _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Did you raise GROUND THREE in the California Supreme Court?

☐ Yes ☑ No.

   If yes, answer the following:

   (1)   Nature of proceeding (i.e., petition for review, habeas petition): _____

   (2)   Case number or citation: _____

   (3)   Result (attach a copy of the court's opinion or order if available):

(d)  GROUND FOUR:  _See attached_

_____

_____

_____

Supporting FACTS: _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Did you raise GROUND FOUR in the California Supreme Court?

☑ Yes ☐ No.

If yes, answer the following:

(1)  Nature of proceeding (i.e., petition for review, habeas petition): _Petition for Review_

(2)  Case number or citation: _S274097_

(3)  Result (attach a copy of the court's opinion or order if available): _Denied_

CIV 68 (Rev Oct 2015)                                  -9-

23. Do you have any petition or appeal now pending in any court, either state or federal, pertaining to the judgment under attack?
☐ Yes ☑ No

24. If your answer to #23 is "Yes," give the following information:
    (a) Name of Court: _____
    (b) Case Number: _____
    (c) Date action filed: _____
    (d) Nature of proceeding: _____
    _____

    (e) Grounds raised: _____
    _____
    _____
    _____
    _____

    (f) Did you receive an evidentiary hearing on your petition, application or motion?
    ☐ Yes ☐ No

25. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:
    (a) At preliminary hearing: Mark Asami Ciummo and Associates 2014 Tulare Street, Suite 300 Fresno, CA 93721
    (b) At arraignment and plea: Mark Asami
    (c) At trial: Mark Asami
    (d) At sentencing: Mark Asami
    (e) On appeal: Athena Shudde 3755 Avocado Blvd., Ste #156 La Mesa, Ca 91941
    (f) In any post-conviction proceeding: N/A
    (g) On appeal from any adverse ruling in a post-conviction proceeding: N/A

26. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
☑ Yes  ☐ No

27. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
☐ Yes  ☑ No

 (a) If so, give name and location of court that imposed sentence to be served in the future:
_____

 (b) Give date and length of the future sentence: _____

_____

 (c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
  ☐ Yes  ☐ No

28. Consent to Magistrate Judge Jurisdiction

   In order to insure the just, speedy and inexpensive determination of Section 2254 habeas cases filed in this district, the parties may waive their right to proceed before a district judge and consent to magistrate judge jurisdiction. Upon consent of all the parties under 28 U.S.C. § 636(c) to such jurisdiction, the magistrate judge will conduct all proceedings including the entry of final judgment. The parties are free to withhold consent without adverse substantive consequences.

   The Court encourages parties to consent to a magistrate judge as it will likely result in an earlier resolution of this matter. If you request that a district judge be designated to decide dispositive matters, a magistrate judge will nevertheless hear and decide all non-dispositive matters and will hear and issue a recommendation to the district judge as to all dispositive matters.

   You may consent to have a magistrate judge conduct any and all further proceedings in this case, including the entry of judgment, by indicating your consent below.

Choose only one of the following:

☐ Plaintiff consents to magistrate  OR          ☑ Plaintiff requests that a district judge
judge jurisdiction as set forth above               be designated to decide dispositive
                                                    matters and trial in this case

29. Date you are mailing (or handing to a correctional officer) this Petition to this court: **6-7-22**

_____

Wherefore, Petitioner prays that the Court grant Petitioner relief to which he may be entitled in this proceeding.

_____

SIGNATURE OF ATTORNEY (IF ANY)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

_____6·7·22_____                    _____
(DATE)                                  SIGNATURE OF PETITIONER

Charles Devon Garrett
P.O. Box 921 C-5 131
Imperial, Ca 92251
Petitioner in Pro per

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

In re CHARLES DEVON GARRETT                    Case No.
      On Habeas Corpus
             Petitioner in Pro per,

VS.

SHAWN MOORE
              Respondent.

After Decision in California Supreme Court
On Habeas Corpus, Challenging Judgment From the
Superior Court County Of Fresno Honorable
Jane Cardoza, Judge Case no. F18903146/F17901972

# PETITION UNDER 28 U.S.C § 2254
# FOR WRIT OF HABEAS CORPUS

Charles Devon Garrett        BJ9946

P.O. Box 921 C-5 #131

Imperial, Ca 92251

Petitioner in Pro per

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

In re CHARLES DEVON GARRETT        Case No.

　　　　　On Habeas Corpus

　　　　　　　　Petitioner in Pro per,

VS.

　　　SHAWN MOORE

　　　　　　Respondent.

After Decision in California Supreme Court

On Habeas Corpus from the Superior Court

County Of Fresno

Honorable Jane Cardoza, Judge

Case no. F18903146/F17901972

PETITION UNDER 28 U.S.C §2254

FOR WRIT OF HABEAS CORPUS

# TOPICAL INDEX

## A.

Pages

Receipt of Exhibits ............................................. B,(i)

Legal Authority .............................................. C(i)

Introduction ................................................. 1

Standard of Review ........................................... 2

Statement of the Case ........................................ 3

Statement of Jurisdiction .................................... 4

Procedural History ........................................... 9

Statement of Facts ........................................... 15

## CONTENTIONS

FOURTH AMENDMENT VIOLATION ........................... 29

 POINTS AND AUTHORITIES............................... 30

JUDICIAL BIAS ......................................... 33

 POINTS AND AUTHORITIES............................... 38

PROSECUTORIAL MISCONDUCT ............................. 45

POINTS AND AUTHORITIES ............................... 53

CONSTRUCTIVE DENIAL OF EFFECTIVE ASSISTANCE ........ 57
OF COUNSEL

 POINTS AND AUTHORITIES ............................. 72

THE CUMULATIVE EFFECT OF THE FUNDAMENTAL
LEGAL ERRORS INFECTED THE TRIAL WITH
UNFAIRNESS AND RENDERED PETITIONER'S
CONVICTION UNCONSTITUTIONAL ........................ 75


CONCLUSIONS OF LAW .................................. 76


PRAYER FOR RELIEF................................... 78


MOTION FOR EVIDENTIARY HEARING...................... 79

# RECEIPT OF EXHIBITS

B.                    Procedural History Exhibits
                              1-12

1) Abstract of Judgment 6pg

2) Judge Gottlieb's Habeas Corpus 2pg denial order (Superior Court)

3) Judge Orozco's Habeas Corpus denial order (Superior Court) 1pg

4) Judge Gottlieb's Habeas Corpus 10pg denial order (Superior Court)

5) Judge Orozco's Habeas Corpus 1pg Order extending court's time to rule

6) Judge Orozco's Habeas Corpus 2pg denial order

7) Petitioner's "Motion to bring Addendum" 3pg

8) Judge Orozco's Habeas Corpus 2pg denial order

9) Petitioner's "Motion to Amend" Fifth District Court of Appeal 14pg

10) Petitioner's "Motion to 3pg Bring Addendum" Fifth District Court of Appeal

11) Fifth District Court of Appeal Summary Denial Order 1pg

12) California Supreme Court 1pg Summary Denial Order

B(i)

Egregious legal Errors of Fact
Exhibits  A-Z  &  1-21

A. Jurisdiction of Case & Structural Error
   Search Warrant   14 pg

B. Police Report  Detective
   Brandon Brown   2 pg

C. Preliminary Hearing  Judge Petrocelli
   "Held to Answer transcript"  3 pg

D. Settlement Conference Hearing  Judge Idiart
   Amended  Information   5 pg

E. Marsden Hearing  Judge Idiart
   Request For New Counsel  8 pg

F. Search Warrant  to search
   "Jail Cell"   16 pg

G. Disqualification  Motion
   C.C.P § 170.6   1 pg

H. Trial Brief   9 pg

I. Judge  Cardoza's
   Disclosure  Commentary  Judicial
   Ethics Canon 3E  1 pg

J. Mr. Walters  in limine Motion
   To Photograph Petitioner's body
   Parts  3 pg

K. continued  in limine motion
   3 pg

L. Trial Counsel's Admitted
   Error to File New trial
   Motion 2 pg

M. Trial Counsel and Petitioner's
   New Trial Motion 18 pg

N. Petitioner denied New
   Counsel  1 pg

O. Petitioner's  Probation
   Report  1 pg

P. Petitioner's  Speech
   3 pg

Q. Additional  Abstract
   of Judgment  3 pg

(ii)

John Mendes

R. Detective Sworn testimony 3pg

S. 6 pack photo line up 1pg

T. District Attorney Mr.Walters
Opposition to Defense Motion for New Trial 5pg

U. Athena Shudde Appellate Counsel's
"Ex Parte Motion to Correct Clerical
Errors In Abstract Of Judgment" 27pg

V. Change of Amended Information
To taylor name change of alleged
Victim Phillip Montano to "John Doe" 1pg

W. Omitted opening statements    1pg

X. Recorded Interview of State's star
Witness Mr.Movesian, and detective John Mendes
Sworn testimony. 2pg

Y. Trial counsel argument against
inadmissible evidence 2pg  "Jailhouse Kite"

Z. Trial Counsel's request to "No mentioning of
Witness tampering to juror's"   1pg

1) Petitioner's self incrimination
   testimony    1 pg

2) District Attorney Mr. Walters
   Closing Argument    2 pg

3) District Attorney Mr. Walters
   Continued Closing Argument    3 pg

4) District Attorney Mr. Walters
   Continued Closing Argument    1 pg
   Spaded and Taylored to Head Shot testimony

5) District Attorney Mr. Walters
   Continued Closing Argument
   leading to "Speculation"    1 pg

6) District Attorney Mr. Walters
   Continued Closing Argument    1 pg
   Told Juror's Petitioner was "Tampering
   with Witnesses"

7) Juror's Request to review "Petitioner's
   Testimony"    1 pg

8) Juror's Request to review Petitioner's
   Testimony, Specifically, "Jailhouse Kite"
   testimony    1 pg

9) District Attorney Mr. Walters
   1 pg in limine motion to admit hearsay
   statements of witnesses if they
   become unavailable to testify

10) Detective Ariana Kasparian
    1 pg Police Report to reduce
    Charge

11) Trial Counsel's attempt
    2 pg to make record of detective
    Ariana Kasparian report

12) Trial counsel's 995
    5 pg    Motion to dismiss

13) Mark Asami and Mr.
    1 pg Walters communication via
    e-mail

14) Petitioner and Felicia
    5 pg Edwards "Jail visit
    recording"

15) Trial Counsel's
    13 pg "Motion to Traverse
    Warrant"

I v

16) Trial Counsel aided Petitioner's
Perjured Testimony    3pg

17) Trial counsel's admission of
"it's not his job to investigate the
alleged Victim Phillip Montano"    1pg

18) Trial counsel's admission of
"not knowing the facts to the detective's
interview with Phillip Montano"    1pg

19) Petitioner's speech to "Present a
Complete defense against the Prosecutions
accusations, with regard to Charged offenses"  3pg

20) Trial counsel's excuse "to not Calling
detective Ariana Kasparian as a witness
to invite the Juror's of mitigating Charges"  1pg

21) Mark Asami mailed Petitioner a copy
of the search warrant along with a note  2pg

Appendix   A - B

A. Appellate counsel's "Motion to Augment"  7 pg
Omitted material

B. Fifth District Court of Appeal's
Judgment Affirmed Opinion of Petitioner's Appeal)  14 pg

∨

# CONTROLLING LEGAL AUTHORITY

C.                                                              Page

FEDERAL STATUTE                                                    4

28 U.S.C § 2254

28 U.S.C § 2254 (a)

28 U.S.C § 2254 (d) (1)

28 U.S.C § 2254 (d) (2)

28 U.S.C § 2254 (e) (1)

28 U.S.C § 2254 (e) (2)

28 U.S.C § 2254 (B)


CALIFORNIA JUDICIAL ETHIC CANONS 3              39, 40

3c (1) (a)

3c (1) (a) (c)

3c (1) (c) (i)

3c (1) (c) (ii)

3c (1) (c) (iii)

3c (1) (e)

3c (1) (a) (v)


FEDERAL CONSTITUTIONAL PROVISIONS

Fourth Amendment

Fifth Amendment

Sixth Amendment

Fourteenth Amendment


CASE LAW

People v. Wende (1979) 25 Cal.3d 436                    9

C (i)

Page

Marshall v. Jerrico, Inc., 446 U.S. 238, 64 L.Ed 2d 182, 100 S.Ct. 1610
(1980) .......................................... 38, 44, 77

Carey v. Piphus, 435 U.S. 247, 259-262, 98 S.Ct. 1042, 1043 .... 38, 77

Mathews v. Eldridge, 424 U.S. 319, 344, 96 S.Ct. 893, 907, 47 L.Ed.
2d 18 (1976) .................................... 38, 77

In re Murchison, 349 U.S. 133, 136, 99 L.Ed. 942, 75 S.Ct. 623
(1955) ........................................... 39, 43

Tumey v. Ohio, 273 U.S. 510, 535, 71 L.Ed. 749, 47 S.Ct. 437 (1927) .. 39, 43

Larson v. Palmateer, 515 F.3d 1057, 1067 (9th Cir. 2008) ........ 39

de Jesus Ortega Melendres v. Arpaio, 2012 U.S. Dist. Lexis 91785 .. 40

California v. Kleppe, 431 F.Supp. 1344 (1977) ................. 40

Caperton v. A.T Massey Coal Co. 556 U.S. 173 L.Ed. 2d 1208, 129
S.Ct. 2252 (2009) ................................ 5, 41

Bracy v. Gramley, 520 U.S. 899, 904-05, 117 S.Ct. 1793, 138 L.Ed.
2d 97 (1997) ..................................... 41

Chapman v. California, 386 U.S. 18, 23, 17 L.Ed. 2d 705, 875 S.Ct.
824 ............................................. 41

Arizona v. Fulminante, 499 U.S. 279, 309-10, 111 S.Ct. 1246, 113 L.Ed.
2d 302 (1991) .................................... 41

Faretta v. California, 422 U.S. 806, 835 ...................... 41

United States v. Moskovits, 86 F.3d 1303 (CA 3rd Cir. 1996) ...... 41

Menefield v. Borg, 881 F.2d 646-99 (9th Cir. 1989) ............ 41

Bell v. Hill, 190 F.3d 1089 (9th Cir. 1999) ................... 41

United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039 (1984) ..... 41

Pazden v. Mauder, 424 F.3d 303 (CA 3rd Cir. 2005) ........... 42

United States v. Hernandez, 109 F.3d 1450, 1453 (9th Cir. 1997) ... 42

United States v. Arnpriester, 37 F.3d 466, 467 (9th Cir. 1994) .... 42

Ronwin v. State Bar of Arizona, 686 F.2d 692, 700 (9th Cir. 1981) .. 42

(ii)

Withrow V. Larkin, 421 U.S. 35, 46, 95 S.ct 1456, 43 L.Ed. 2d 712 (1975)  42

Johnson V. Mississippi, 403 U.S. 212, 215-16, 91 S.ct. 1778, 29 L.Ed 2d 423 (1971)  43

Buffalo V. Sunn, 854 F.2d 1158, 1165 (9th Cir. 1988)  43

Hicks V. Oklahoma (1980) 447 U.S. 343 100 S.ct. 2227, 65 L.Ed. 2d 175  5

Goudy V. Basinger, 604 F.3d 394 (CA 7th Cir. 2010)  5

Sharp V. Rohling, 793 F.3d at 1229 (CA 10 2015)  6

Byrd, 645 F.3d at 1171-72  6

Rippo V. Baker 137 S.ct. 905, 197 L.Ed. 2d 167 (U.S. 2017)  6

Early V. Packer, 537 U.S. 3, 7, 154 L.Ed. 2d 263, 123 S.ct. 362 (2003)  6

Jones V. Luebbers 359 F.3d at 1012 U.S. App. Lexis 4040 (2004)  6

Dyas V. Lockhart, 771 F.2d 1144 (8th Cir. 1985)  7

Franklin V. McCaughtry, 398 F.3d 955 (CA 7th Cir. 2005)  7

Lisenba V. California, 314 U.S. 219, 236, 62 S.ct. 280, 86 L.Ed. 166 (1941)  7

Aetna Life Ins. Co V. Lavoie, 475 U.S. 813, 825, 106 S.ct. 1580, 89 L.Ed. 2d 823 (1986)  7

Lofton V. Whitley, 905 F.2d 885-89 (CA 5th Cir. 1990)  7

Cooper V. Oklahoma, 517 U.S. 348, 363-65, 116 S.ct. 1373, 134 L.Ed. 2d 498 (1996)  7

Washington V. Gulcksberg, 521 U.S. 702, 720, 117 S.ct. 2258, (1997)  8

Gardner V. City of Cleveland, 656 F.Supp.2d 751 (N.D. Ohio 2009)  8

Williams V. Taylor, 529 U.S. 362, 146 L.Ed 2d 389, 120 S.ct. at 1001  8

Perez V. Rosario, 459 F.3d 943, 950 at 1039 (9th Cir. 2006)  8

Nunes V. Mueller, 350 F.3d 1045, 1055 (9th Cir. 2003)  8

(iii)

1  Morrissey v. Brewer, 408 U.S. 484, 32 L.Ed.2d 484, 92 S.ct.    76

2  2539, 2600 (1972)

3  Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123,    77

4  168, 71 S.ct. 624, 646, 95 L.Ed. 817 (1951)

5  Estelle v. Gambel, 429 U.S. 97, 97 S.ct. 285, 50 L.Ed 2d 251 (1976)  77

6  Gideon v. Wainwright, 372 U.S. 339, 9 L.Ed 2d 799, 83 S.ct. 792    77,74

7  (1963)

8  Jones v. Cunningham, 371 U.S. 236, 243 9 L.Ed.2d 285, 83 S.ct.373  77

9  (1963)

10 Chambers v. Mississippi 410 U.S. at 298, 302-03, 93 S.ct. 1038    75,54

11 Parle v. Runnels, 505 F.3d 922 (CA 9th Cir. 2007)    75

12 United States v. Tory, 52 F.3d 207 (CA 9th Cir. 1995)    75

13 In re Carpenter, 9 C4th at 646    6

14 In re Baker, 206 CA 3d 493 (1988)    6

15 McMann v. Richardson, 397 U.S. 759, 771 n 14, 90 S.ct. 1441, 25 L.Ed  72

16 2d 763 (1970)

17 Iowa v. Tovar, 541 U.S. 77, 80-81, 158 L.Ed 2d 209 (2004)    72

18 Summerlin v. Schriro, 427 F.3d 623 (9th Cir. 2005)    72

19 Geder's v. United States, 425 U.S. 80, 91, 96 S.ct. 1330, 47 L.Ed 2d  72

20 592 (1976)

21 Lakin v. Stine, 44 F. Supp. 2d 897 (E.D Mich 1999)    72

22 Powel v. Alabama, 287 U.S. 45, 77 L.Ed. 158, 53 S.ct. 55 (1932)    72

23 Earls v. McCaughtry, 379 F.3d 489 (7th Cir. 2004)    72

24 Brubaker v. Dickson, 310 F.2nd 30, 32 (9th Cir. 1962)    74

25 Brown v. Craven, 424 F.2d 1166, 1170 (9th Cir. 1970)    74

26 Daniel v. Woodford, 428 F.3d 1181 (9th Cir. 2005)    74

27 United States ex. rel. Thomas v. O'Leary, 856 F.2d 1011, 1015    74

28 (7th Cir. 1988)

IV

Soffar V. Dretke, 368 F.3d 441 (5th Cir 2004)    74

Strickland V. Washington, 104 S.Ct. 2052 (1984)    74

United States V. Tucker, 716 F.2d 576 (9th Cir. 1983)    74

Richter V. Hickman, 578 F.3d 944 (9th Cir. 2009)    74

State V. Reed, 102 Wash. 2d 140, 147, 684 P.2d 699 (1984)    53

State V. Fisher, 165 Wn. 2d 727, 202 P.3d 937 (2009)    53

States V. Gaudin, 515 U.S. 506, 522-23 (1995)    53

Brown V. Palmer, 441 F.3d 347 (6th Cir. 2006)    53

United States V. Maddox, 156 F.3d 1281-82    53

Berger V. United States, 295 U.S. 78, 84, 55 S.Ct. 629, 79 L.Ed. 53
1314 (1935)

Donnelly V. Dechristofore, 416 U.S. 637, 646, 94 S.Ct. 1868, 40 L.Ed.   54
2d 431 (1974)

United States V. Young, 470 U.S. 1, 7, 105 S.Ct. 1038, 84 L.Ed. 2d 1   54
(1985)

Underwood V. Royal, 894 F.3d 1154 (10th Cir. 2015)    54

Walker V. Davis, 840 F.2d 834 (11th Cir. 1988)    54

Crawford V. Washington, 514 U.S. 36, 158 L.Ed. 2d 177, 124 S.Ct.   54
1354 (2004)

California V. Green, 399 U.S. 149, 157 (1970)    54

Ouska V. Cahill-Masching, 246 F.3d 1036, 1050 (7th Cir. 2001)    55

United States V. Frady, 456 U.S. 152, 170, 102 S.Ct. 1584 (1982)    55

Griffin V. California 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed. 2d 106   55
(1965)

United States V. Wolf, 787 F.2d at p. 1099 (7th Cir. 1986)    55

United States V. Bosch, 584 F.2d at p. 1123-24 (1st Cir. 1978)    55

Hoffman V. United States, 341 U.S. 341 479, 486-87 (1951)    55

United States V. Lampkin, 192 F.3d 280, 285 (2d Cir. 1999)    55

v

Case 1:22-cv-00899-JLT-HBK    Document 1    Filed 06/10/22    Page 26 of 107

United States V. Stokes, 124 F.3d 39, 45 (1st Cir. 1997)    55

United States V. Goodwin, 457 U.S. 368, 373 (1982)    55

Kyles V. Whitley, 514 U.S. 419, 437 (1995)    56

United States V. Morris (7th Cir. 1996) 80, F.3rd 1151, 1170    56

United States V. Zerno-Arce, 44 F.3rd 1420 (9th Cir. 1995)    56

Franks V. Delaware, 438 U.S. 154, 155-57 (1978    30

United States V. Lefkowitz, 618 F.2nd 1313, 1317 (9th Cir. 1980)    31

United States V. Alvarez, 127 F.3rd 372, 374 (5th Cir. 1997)    31

Brewer V. Williams, 430 U.S. 387, 97 S.ct. 1232    31

Hines, 963, F.2d at 257    31

In re Pack, 616 2.d at 1011    32

United States V. Arnold, 106 F.3d at 37-41 (3rd Cir. 1997)    32

Illinois V. Gates, 462 U.S. 213 (1983)    32

United States V. Leon, 468 U.S. 897, at 923 (1984)    32

Herrera V. Lemaster, 225 F.3d 1176, (2000)    32

Lawhorn V. Allen, 519 F.3d at p. 1287 (11th Cir. 2008)    32

In re Bell, 19 C 2d 488, 501 (1942)    6

Townsend V. Sain, 372 U.S. 293, 313, 83 S.ct. 745, 9 C.Ed. 2d 770 (1963)    8

Hurles V. Ryan, 706 F.3d 1021 (9th Cir. 2013)    8

Norris V. United States, 820 F.3d 1261 (11th Cir. 2006)    8

Poppell V. City of San Diego, 149 F.3d 951 (9th Cir. 1998)    53

In re Reno (2012) 55 C4th 428, 458 n15    77

Jackson V. Virginia, 443 U.S. 307 (1979)    56

Nix V. Whiteside (1986) 475 U.S. 157, 173, 106 S Ct. 988    74

VI

Charles Devon Garrett CDC# BJ9946

P.O. Box 921 C-5 #131

Imperial, Ca 92251

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

In re CHARLES DEVON GARRETT          Case No.

Petitioner in Pro per

On Habeas Corpus,

VS.

SHAWN MOORE

Respondent.

TO THE ABOVE ENTITLED COURT:

    Petitioner, CHARLES DEVON GARRETT, arrives to this honorable court via Habeas Corpus challenging a state court's judgment which remains unpublished as of May 18, 2022, by the California Supreme Court. It is respectfully submitted that review is invoked pursuant to the criteria set forth in the Federal statute 28 U.S.C § 2254. On review, Petitioner's judgment should be vacated in it's entirety.

1

# STANDARD OF REVIEW

1) Whether the state court's decision to deny Petitioner's habeas corpus petitions was objectively unreasonable

2) Whether the state courts fact finding process rested on an unreasonable determination of the facts in light of the evidence presented in Petitioner's petitions

3) Whether the State courts abused it's discretion by refusing Petitioner an evidentiary hearing to establish the facts of his underlying claims, on the record

# STATEMENT OF THE CASE

There were material facts, that was sanitized from the trial court record, which deprived Petitioner of procedural due process in the course of Petitioner's appeal proceeding. The committed error deprived Petitioner's state appointed appellate counsel an effective review of the underlying facts and an adequate review from the Fifth District Court of appeal, following appellate counsel's wende brief. When Petitioner filed a habeas corpus petition, requesting the state courts to overturn his conviction based on the committed structural error. The state courts arrived at an objectively unreasonable determination of the facts by denying Petitioner's habeas corpus petitions, in light of the preponderance of evidence presented in his habeas petitions. Petitioner further asserts, he has been denied justice in the state courts, as a result. The cumulative legal errors in Petitioner's case, are fundamental, and have resulted in a complete miscarriage of justice, that led to an unconstitutional conviction.

# STATEMENT OF JURISDICTION

It is respectfully submitted that jurisdiction of this court is invoked pursuant to 28 U.S.C § 2254:

1) Petitioner was denied due process and equal protection of the laws guaranteed by the Fourteenth Amendment 28 U.S.C § 2254 (a)

2) The state courts were objectively unreasonable in denying Petitioner relief based on a deviation of clearly established Federal law, and California Judicial Ethic Canons. 28 U.S.C § 2254 (d)(1)

3) The state courts decision to deny Petitioner relief, was based on an unreasonable determination of the facts in light of the preponderance of evidence presented to the state courts 28 U.S.C § 2254 (d)(2)

4) Petitioner has presented clear and convincing evidence to this honorable court that proves the state courts judgment is illegal and erroneous 28 U.S.C § 2254 (e)(1),(e)(2)

5) The facts underlying his claims are sufficient to establish by clear and convincing evidence because of constitutional error, no reasonable fact-finder would have found Petitioner guilty of the underlying offenses. Petitioner is legally innocent 28 U.S.C § 2254 (B)

# POINTS AND AUTHORITIES

Petitioner has proved that the honorable judge Cardoza was Disqualified to sit as presiding trial judge in his underlying case. Petitioner contends that, the state superior court violated it's own established trial court rules, statutes, California Constitution, and deviated from the California Judicial Ethics Canons see Hicks v. Oklahoma (1980) 447 U.S. 343 [100 S.ct. 2227; 65 L.Ed.2d 175]. The Superior Court factual findings, resulted in an unreasonable determination of the facts in light of the "search warrant", which clearly proves the honorable judge Cardoza was disqualified to sit as presiding trial judge in the underlying case see Goudy v. Basinger, 604 F.3d 394 (CA 7 2010), also see Caperton v. A.T. Massey Coal Co. (2009) 556 U.s. 173 L.Ed.2d 1208, 129 S.ct. 2252 The search warrant presents an "extreme fact" that warrants disqualification. "Because the codes of judicial conduct provide more protection than due process requires, most disputes over disqualification will be resolved without resort to the Constitution" 556 U.s. at p. 129 S.ct at p. 2267.

The search warrant was sanitized from the appellate record, and because the search warrant was omitted from the trial record, this materially and prejudicially affected Petitioner's procedural habeas and appellate due process of law. Assuming that the Superior Court judge's "really thought the search warrant was apart of the record", one can think that, "Petitioner or trial counsel knew of the conflict of interest and failed to object", or "Why isn't this issue raised on appeal". Taking those assumptions into

account, it's plausible for the Superior Court judge's to
misstate the record in making their findings, because their
misapprehension can fatally undermine the fact-finding
process, rendering the resulting factual-finding unreasonable see
Sharp v. Rohling, 793 F.3d at 1229 (CA 10 2015), Byrd, 645 F.3d
at 1171-72 Petitioner contends that, all of his petitions
presents facts, that warrants reversal of his conviction, and he
should have obtained relief from the petition the honorable
judge Orozco considered November 19, 2020 (revert back to exhibit
#3) Petitioner's claims was not apparant from the trial
court record, or appellate record see In re Bell (1942) 19 C 2d
488, 501, also see In re Carpenter, 9 c 4th at 646 (this case was cited
in the petition the honorable judge Orozco considered November 19, 2020).

    The Superior Court judge's factual findings to his judicial
bias claim was objectively unreasonable because the Superior
Court judge's did not ask the question the United States Supreme
Court Precedents require: "Whether, considering all the circumstances
alleged, the risk of bias was too high to be constitutionally
tolerable" see Rippo v. Baker 137 s.ct. 905; 197 L.Ed. 2d 167 (U.S. 2017).
"Clearly established Federal law, as determined by the Supreme
Court of the United States", 28 U.S.C § 2254 (d)(1) recognizes not
only actual bias, but also the appearance of bias, as grounds for
disqualification. The fact that a state court does not rely on
United States Supreme Court Precedent, however, does not prevent
our review of the reasoning and result expressed in a state
court's judgment" Early v. Packer, 537 U.S. 3, 7, 154 L.Ed. 2d 263,
123 s.ct. 362 (2003) quoting Jones v. Luebbers 359 F.3d at 1012 (2004)
U.S. App. Lexis 4040.

In hindsight, the Superior court judge's were especially objectively unreasonable by failing to apply the California Judicial Ethic Canons that was revised in July of 2020. Petitioner has cited the old version of the California Judicial Ethic Canons, however, the old version was valid as of February 19, 2019 when Petitioner began trial. The Superior court judge's should have interpreted the old version as if they were the revised version see Dyas V. Lockhart, 771 F.2d 1144 (8 Cir. 1985). Petitioner has presented a smoking gun in all of his petitions and the state courts decision to deny him relief was objectively unreasonable see Franklin V. McCaughtry, 398 F.3d 955 (CA 7 2005). A fair trial and appeal is a constitutional right see Lisenba V. California, 314 U.S. 219, 236, 62 S.ct. 280, 86 L.Ed. 166 (1941), Aetna Life ins. co. V. Lavoie, 475 U.S. 813, 825, 106 S.ct. 1580, 89 L.Ed. 2d 823 (1986). Because the search warrant was sanitized from the appellate record, coupled with other missing portions of the trial transcripts, this materially and prejudicially affected Petitioner, because the omitted material facts circumvented Petitioner's state appointed appellate counsel see Lofton V. Whitley, 905 F.2d 885-89 (CA 5 1990). The state Courts objectively unreasonable decision to reject his claims, was gross deviation of Constitutional fundamental Principles of Justice that offends Due Process of law see Cooper V. Oklahoma, 517 U.S. 348, 363-65, 116 S.ct. 1373, 134 L.Ed.2d 498 (1996) [omitted]. An interest is fundamental for the purpose of substantive due process analysis if it is "objectively, deeply rooted in this Nations history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if it were sacrificed" see Washington

7

v. Gulcksberg, 521 U.S. 702, 720, 117 S.Ct. 2258, (1997), Gardner v. City of Cleveland, 656 F.Supp.2d 751 (N.D. Ohio 2009). The Superior Court's denials to Petitioner's Judicial Bias claim rested on an unreasonable determination of the facts in light of the evidence presented in Petitioners petition, therefore, the Superior Court's factual findings without an Evidentiary hearing was objectively unreasonable because Petitioner was deprived of the opportunity of a full and fair hearing to make record of the facts that was presented in his petitions, therefore, "the fact-finding process itself is deficient" and not entitled to deference see Williams v. Taylor, 529 U.S. 362, 146 L.Ed 2d 389, 120 S.Ct. at p.1001, also see Perez v. Rosario, 459 F.3d 943, 950 at 1039 (9th Cir. 2006) (amended) "In many cases, a state court's determination of the facts without an evidentiary hearing creates a presumption of unreasonableness" (citing Taylor, supra 366 F.3d at 1000; see also Nunes v. Muellar, 350 F.3d 1045, 1055 (9th Cir. 2003). Where Petitioner has not failed to develop the factual basis of his Judicial bias claim in state court as required by 28 U.S.C. § 2254 (e)(2), an evidentiary hearing is required if (1) Petitioner has shown his entitlement to an evidentiary hearing pursuant to Townsend v. Sain, 372 U.S. 293, 313, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), and (2) the allegations, if true, would entitle Petitioner to relief pursuant to Stanley v. Schriro, 598 F.3d 612, 624 (9th Cir. 2010). Petitioner is entitled to an evidentiary hearing if his allegations, if proved, would entitle him to relief. Stanley, supra, 598 F.3d at 624 which the evidence proves, they would. Hurles v. Ryan, 706 F.3d 1021 (CA 9th Cir. 2013), see also Norris v. United States 820 F.3d 1261, (11th Cir 2006) (in accord).

8

# PROCEDURAL HISTORY

Petitioner was charged and convicted by jury on March 5, 2019, of the following charges; Attempted Murder PC 664/187 subd (a), Assault with a semi-automatic firearm PC 245 subd (b), discharging a firearm with gross negligence PC 246.3 subd(b), Possession of a firearm by a felon PC 29800 subd (a)(1). The information further consisted of additional enhancements of, personally discharging a firearm PC 12022.53 subd (c) in the commission of Attempted Murder, and that Petitioner personally used a firearm in the commission of Assault with a semi-automatic PC 12022.5 subd (a). Petitioner was sentenced to 29 years July 26, 2019 (see exhibit #1 abstract of judgment).

Petitioner filed a timely appeal and was later appointed appellate counsel by the state. Appellate Counsel (Athena Shudde) requested the Fifth District Court of Appeal to review the trial record, to determine whether there are any arguable issues on Appeal pursuant to People v. Wende (1979) 25 Cal. 3d 436. Appellate counsel advised Petitioner of "his right to file a supplemental brief within 30 days of the date, from which the wende brief was filed". Therefore, Petitioner filed a letter brief arguing, Erroneous jury instruction, Ineffective Assistance of counsel, and Prosecutorial Misconduct, the letter brief was filed in the Fifth District Court of Appeal on or about July 6, 2020.

Petitioner raised an additional claim of Judicial Bias on habeas corpus, in which Petitioner filed in the Superior Court county of Fresno, also on July 6, 2020. To

9

his contention, Petitioner presented a material fact in his habeas corpus petition, that was outside of the appellate record. The material fact, was the search warrant the presiding trial judge signed (honorable Judge Cardoza), which gave rise to the underlying charges Petitioner was found guilty of March 5, 2019. However, Petitioner did not recieve a response within 60 days of filing as required by rule 4.551(a)(3)(A) of the California rules of court, so Petitioner requested that the Superior Court County of Fresno rule on the petition that was previously filed pursuant to California rule 4.551 (a)(3)(B).

The Superior Court County of Fresno issued Petitioner a new case no. September 18, 2020. However, Petitioner never recieved any ruling, until November 6, 2020, exactly four months from the day Petitioners habeas corpus was filed (see exhibit #2 page 1-2). Petitioner petition was denied without prejudice, due to his appeal that was currently pending at the time. Petitioner immediately arrived back to the Superior Court County of Fresno, with a second petition. This petition contained a claim of Judicial Bias, and a claim of Ineffective Assistance of counsel, the petition was filed on November 19, 2020 before the honorable Judge Gary Orozco. Petitioner explained to the court that, "the claims presented are not apart of the appellate record, and the Superior Court County of Fresno is within it's jurisdiction to enter-tain his habeas corpus petition pursuant to In re Carpenter, 9 C 4th at 646, also see In re Baker (1988) 206 CA 3d 493".

Petitioner was ultamately denied December 29, 2020,

10

the honorable Judge Orozco stated in relevant part "Petitioner's appeal from his judgment is currently pending in the Fifth District Court of Appeal and this court does not have jurisdiction to consider claims that are apparent from the appellate record" (see exhibit #3). Petitioner arrived back to the Superior Court county of Fresno, with a third habeas corpus petition. This petition contained claims of; Judicial Bias, Fourth Amendment violation, and Ineffective Assistance of counsel. Petitioner also explained to the court that "his claims are not apart of the appellate record; Petitioner has a copy of his transcripts", then he cited In re Carpenter, 9 c.4th at 646 (like he did in the previous petition). The honorable judge Gottlieb ruled that "the court has jurisdiction to address these claims" then also cited In re Carpenter (1995) 9 Cal. 4th 634, 646. However, the honorable judge denied Petitioner's habeas corpus March 4, 2021 (see exhibit #4 pages 1-10).

Petitioner immediately arrived back to the Superior Court with a Fourth petition, this petition contained; Judicial Bias, Prosecutorial Misconduct, and Ineffective Assistance of counsel. This petition was filed March 29, 2021 under case no. 21CRWR68 6077, which was assigned back to the honorable judge Gottlieb. Petitioner explained to the honorable judge that "it was not Petitioner's duty to investigate into the honorable judge Cardoza's background to confirm that she is a neutral and detached arbiter, rather, the responsibility lies with Judge Cardoza. Furthermore, the Equal Protection Clause affords Petitioner, protection of the laws, to prevent such conflicts". Petitioner also noted in this petition, that "the court ignored

11

1  the Federal Nature of his Judicial Bias claim, that was
2  previously denied", however, Petitioner was denied May 10,
3  2021 Petitioner never recieved the denial order (Petitioner
4  found out via family member).

5       Petitioner, being a Layman at Law, thought he was
6  doing something wrong, therefore, Petitioner arrived back to
7  the Superior Court County of Fresno with a Fifth habeas
8  petition. This petition contained a single claim of Judicial
9  Bias, however, Petitioner also attached a disqualification
10  motion, Petitioner further asserted, that the "sentence is
11  illegal due to the fact that the honorable judge Cardoza
12  sitting as a disqualified judge when she (Judge Cardoza)
13  sentenced Petitioner". This petition was filed on June 4,
14  2021, however, the court issued an order "extending Court's
15  time to rule" (see exhibit #5). The honorable judge Orozco
16  denied Petitioner's habeas petition (see exhibit #6 page 1-2).

17       Because Petitioner did not recieve the denial order
18  unitl 3 weeks later, Petitioner filed a request for a ruling
19  attached with the same petition that was pending review
20  (because Petitioner did not know he was denied), the court issued
21  Petitioner a new case no. Therefore, when Petitioner did
22  find out that he was denied, he already had a new
23  case no. (unknowingly that he was already denied). The honorable
24  judge Orozco ruled Petitioner's previous habeas as "successive",
25  which also noted "Petitioner also included a "motion to
26  disqualify" Judge Cardoza in his underlying felony case. However,
27  habeas is a seperate proceeding and any motions Petitioner
28  wishes to file that are related to his felony case must

12

1  be filed directly in that case" (revert back to exhibit #6
2  page 1).

3        Petitioner interpreted that to be a legal cue,
4  directing him to submit the disqualification motion directly
5  to the trial court. So Petitioner sent a disqualification
6  motion directly to the trial court and also renewed
7  the disqualification motion through the habeas proceeding
8  under the current habeas corpus case no. Petitioner then
9  filed a "motion to bring Addendum" setting forth a more
10  fuller presentation of the previously rejected issues (see
11  exhibit 7 page 1-3). However, the honorable judge Orozco
12  also denied that petition (see exhibit #8 page 1-2). Petitioner
13  initially arrived to the Fifth District Court of Appeal
14  "challenging the disqualification motions Petitioner filed in
15  the trial court", Petitioner, being a Layman at law labeled
16  the habeas corpus petition as a "Writ of Mandate" which
17  was titled "Charles Devon Garrett V. Superior Court", this
18  was filed December 13, 2021.

19        Petitioner has done some research here at Centinela
20  State Prison, and learned that, Petitioner has to submit
21  his habeas corpus petitions to the court of appeal. Petitioner
22  immediately submitted the relevant documents to the
23  Fifth District court of appeals (see exhibit #9), Petitioner
24  also argued that, "the Superior Court judge's factual findings were
25  clearly erroneous, and objectively unreasonable", Petitioner further asserted
26  "the honorable judge Gottlieb mistated the record in making his factual
27  findings that derived from 'an unreasonable determination' of the facts
28  in light of the "evidence" presented in Petitioner's petition"."

13

Because Petitioner has raised the same claims in his previously denied petitions, Petitioner drafted a "Motion to Bring Addendum", requesting the Fifth District Court of Appeal to "Consolidate all of the previous denied petitions and consider them as a whole" (see exhibit 10 page 1-3).

The Fifth District Court of Appeal denied Petitioner's Writ of Habeas Corpus, along with subsequent amendments and motions (see exhibit #11). Petitioner filed a timely Petition for Review on April 15, 2022, However, the Petition for Review was also denied (see exhibit #12).

14

# STATEMENT OF FACTS

On March 1, 2018, there was a GMC Denali truck stolen at 1240 N. Crystal, this address is located in the Parkway area of Fresno California. Among the vehicle theft, were 3 handguns that was inside the GMC Denali truck, prior to the theft, a 9MM Ruger, 40.Cal Tauras, and 380.Cal Ruger were also reported stolen. However, the GMC Denali was recovered at 4273 N. Durango Ave but the guns were not found and were still missing.

On March 27, 2018 Petitioner arrived to the Amstar gas station located in the area of Parkway in Fresno California. As Petitioner went inside the store to pay for gas, he left his Keys in the ignition, by the time Petitioner walked outside the store, his car was gone! Petitioner noticed a gentlemen running towards him, whom he was familiar with, this gentleman witnessed the car theft and told Petitioner that, "it was a mexican wearing a black hooded sweater that stole your car". Petitioner asked this gentlemen, "if he could use his phone to call his girlfriend", due to the phone that Petitioner owned, was inside the car prior to the theft.

Petitioner called his then girlfriend (Felicia Edwards) and advised her "what had just happened", with regard to the car theft. Petitioner also advised Ms. Edwards to "report the car stolen" because the stolen vehicle was registered in her (Felicia Edwards) name. Felicia Edwards met with Petitioner and the associate whom witnessed the car theft, both got inside the car and patroled the area of Parkway, in

1  search of Petitioner's car. It was Petitioner's belief, that
2  the car wouldn't be to far, due to him driving on an
3  empty tank prior to arriving at the gas station.
4      On March 29, 2018, Petitioner was arrested and taken
5  into custody for possession of a firearm. This particular
6  incident took place at the Legacy Commons Apartment
7  Complex 2255 S. Plumas Southwest Fresno, California. It was
8  alleged, that Petitioner made threats, and displayed a pistol
9  yelling "Strother over here, I'm not running from nobody".
10  While Petitioner was in custody for that specific case, lead
11  detective John Mendes and his partner Brandon Brown
12  started investigating a shooting that took place on 949
13  N. Parkway Sierra Inn Hotel on March 27, 2018, "the same
14  day Petitioner's car was stolen". The initial investigation
15  started at the end of April 2018, which would be about
16  a month after the shooting.
17      John Mendes obtained video footage from the Sierra Inn
18  Hotel located at 949 N. Parkway Dr. The video footage displays ; A
19  Silver Dodge Charger enter the hotel parking lot, then exits
20  back on to Parkway Dr. A light skinned male can then be
21  seen walking towards two males (black heavy set male and
22  Hispanic male), the light skinned male walks towards the
23  Hispanic male, the video footage depicts, what appeared to be
24  a verbal confrontation between both males. The suspect pulls
25  out a firearm, an fires a single round in the direction
26  of the Hispanic male ; due to nightfall coupled with the
27  poor quality of the video footage, the muzzle flash
28  from the gun, can also be seen when the single round was

16

fired.

Everyone is last seen walking away, and nobody was present upon police arrival. Fresno Police officers, later recovered an expended 9MM Luger shell casing at the scene. John Mendes reviewed police reports, and noticed there was an eyewitness whom claimed to have "seen the shooting" on March 27, 2018 at 949 N. Parkway Dr at the Sierra Inn Hotel in Fresno California. The witness statement was that, "he was standing outside smoking a cigarette when he heard somebody yelling something about a stolen cadillac". After reading this witness statement of, "how the shooting happened, and what the shooting suspect looked like". John Mendes began researching, stolen cadillac's that was reported stolen on the day of the shooting, John Mendes discovered that Felicia Edwards had "reported a stolen cadillac, about an hour prior to the shooting" he (John Mendes) was investigating.

John Mendes continues his investigation, and conducted research on Felicia Edwards whom initially reported the car stolen. John Mendes ran Felicia Edwards number through a database called "Records Management System", this revealed Ms. Edwards prior contacts, which led to Ms. Edwards and Petitioner having a connection between each other. John Mendes conducts research on Petitioner's Government name, and found out that Petitioner was in custody on firearm charges. John Mendes garnered information from his fellow officers that, "Petitioner is in custody for firearm charges and the gun Petitioner was alleged to be found in his possession, was a stolen 380. Cal Ruger."

17

1    John Mendes continues his investigation, and digs into
2    the stolen 380.Cal Ruger, that Petitioner was accused of
3    possessing. John Mendes discovered that, "the 9MM Ruger,
4    and 40.Cal Tauras were stolen, along with the 380.Cal
5    Ruger. Which initially were contained in a black 2011 GMC
6    Denali that was reported stolen on March 1, 2018 at 1240
7    N.Crystal, which was about a half mile away from the
8    shooting". John Mendes then looked at a Fresno County Jail
9    booking photo of Petitioner, and noticed that, "Petitioner fits
10   the description of the suspect" whom was described by the
11   eyewitness whom claimed to have seen the shooting March
12   27, 2018.
13        John Mendes partner Brandon Brown, was listening
14   to jail phone call recordings between Petitioner and Felicia
15   Edwards, one specific conversation, Ms.Edwards stated, "she (Ms.
16   Edwards) was locked out the house", John Mendes and Brandon
17   Brown presumed that, "Petitioner and Ms.Edwards were living
18   together". John Mendes then started following Ms.Edwards,
19   John Mendes discovered where Ms.Edwards lived, which was
20   5296 W. Holland Ave in Fresno California. John Mendes also learned
21   that, "the stolen GMC Denali truck, that contained the stolen
22   guns, was found at 4273 N. Durango Ave. This is less than
23   one and a half miles from Ms.Edwards and Petitioner's
24   residence". However, the 9MM Ruger and 40.Cal Tauras
25   were still missing, Petitioner was "alleged to have
26   possession of the stolen 380.Cal Ruger", in which he was
27   currently in custody at the time of John Mendes
28   and Brandon Brown investigation.

18

1   John Mendes conjectured that "sense Petitioner was
2   alleged to have possession of the stolen 380.Cal Ruger,
3   Petitioner could also have the remaining stolen guns,
4   which would be the "9MM Ruger and 40.Cal Tavras". And
5   the 9MM Ruger, "seats the same caliber shell casing as
6   the one found at the crime scene on 949 N.Parkway Dr.
7   Sierra Inn Hotel March 27, 2018". It was John Mendes
8   belief, that "the stolen 9MM Ruger, was the same gun, that
9   spit out the shell casing that was found on the night of
10  the shooting March 27, 2018". John Mendes created a six
11  pack photo line up, with Petitioner being amongst the
12  six individuals, then John Mendes and Brandon Brown
13  engaged contact with the eyewitness whom claimed to
14  have seen the shooting on the night of March 27, 2018.
15      The witness whom identified himself as Vince
16  Movesian stated "he (Mr.Movesian) was standing outside of
17  his hotel when he seen a black male walk out of a grey
18  Charger, then approached the hispanic male (whom he knew
19  as Phil), the black male was yelling about a stolen
20  cadillac then the black male pulls out a gun and shot
21  at Phil", Mr.Movesian further asserted that "he could
22  not believe the guy missed" (with regard to the shot fired),
23  John Mendes asked Mr.Movesian if "he could identify the
24  suspect if shown a picture". John Mendes gives Mr.Movesian
25  the six pack photo line up, Mr.Movesian pointed Petitioner
26  out of the six pack photo line up then stated, "I cannot
27  be 100 percent sure but he (Mr.Movesian) is pretty damn
28  sure Petitioner is the shooting suspect."

19

Jonn Mendes asked Mr. Movesian "if he (Mr. Movesian) knows were Phil may be", Mr. Movesian gave a description of Phil and also told detectives that, "Phil is usually on Parkway wearing a black back pack". Jonn Mendes and Brandon Brown patroled the Parkway area looking for Phil, Jonn Mendes and Brandon Brown seen Phil at the corner store, located in the Parkway area. Jonn Mendes and Brandon Brown engaged contact with Phil, whom identified himself as Phillip Montano. John Mendes questioned Mr. Montano about the shooting that occured about a month prior to the present interview, Jonn Mendes initiated the conversation by stating "Your a lucky guy" (quoting what Mr. Movesian told detectives when Mr. Movesian saw Phillip Montano after the shooting).

Phillip Montano told detectives that "the altercation was about a stolen car". Brandon Brown asked Mr. Montano "if he (Phillip Montano) would like to look at any pictures of the suspect?", Mr. Montano stated "he did not want to". John Mendes gave Mr. Montano a police card, Phillip Montano then walks away. (This interview was conducted right after the interview with Vince Movesian) At this point in Jonn Mendes and Brandon Brown investigation, they obtained the following evidence; recorded jail phone calls between Petitioner and Ms. Edwards, the causal link between the stolen guns and Petitioner, Mr. Movesian recorded statement coupled with Mr. Movesian pointing Petitioner out of the six pack photo line up, which indicated "Petitioner being the shooting suspect" on March 27, 2018, and the video footage from the Sierra Inn hotel.

With this information, John Mendes applies for a

20

1  search warrant application. The honorable judge Cardoza was
2  in judicial capacity and signed off on the search warrant
3  (see exhibit A page 1-14), this was May 2, 2018. On May 7, 2018,
4  Petitioner was called to the Fresno Police Department, "while he
5  was in custody awaiting trial for the stolen 380. cal Ruger gun
6  charge". Petitioner was interviewed by detectives John Mendes
7  and Brandon Brown after "waiving his right to counsel",
8  however, Petitioner was being represented by Linden Lindahl
9  at the time of the interview and because the stolen 380. cal
10 Ruger was intertwined in John Mendes investigation at
11 the time of the interview, Petitioner never waived his right
12 to counsel "on the record", prior to the interview with
13 detectives.

14      In any event, Petitioner told detectives about the
15 incident with regard to his car being stolen "right under
16 his nose", but Petitioner denied being the shooter on March
17 27, 2018. John Mendes and Brandon Brown advised Petitioner
18 that, "Ms. Edwards was arrested and her residence along with
19 her car was being searched", Petitioner ended the interview
20 and returned back to the Fresno County Jail where he was
21 currently housed. The evidence that was recovered from the
22 search warrant consist of: Two boxes of ammunition, a black
23 T-shirt that read "Courtesy of the Mac" written on it, and khaki
24 shorts this was evidence that was found at Ms. Edwards residence.
25 Officers later found a 9MM FN firearm serial number FX1U029092
26 with an extra magazine, in Ms. Edwards vehicle (see exhibit B
27 page 1-2).
28      Petitioner recieved additional charges on or about

21

1  May 10, 2018, while he was still in custody awaiting trial for
2  the stolen 380.cal Ruger. The initial charges consist of ; Assault
3  with a firearm, negligent discharge of a firearm, possession of
4  a firearm, and carrying a loaded gun in public. The information
5  further alleged, that Petitioner personally used a gun PC 12022.5
6  (a), and the crimes charged were for the benefit of a street
7  gang 186.22. Petitioner was then represented by Jeremy Snell
8  whom conflicted off Petitioner's case for unknown reasons,
9  Petitioner was then represented by Mark Asami regarding the
10  charges mentioned above, Petitioner invoked his right to a
11  speedy trial.
12      Petitioner went to trial for the gun possession
13  charge (stolen 380.cal Ruger), and was acquitted by jury on
14  August 18, 2018. However, Petitioner was never released due to
15  the pending charges mentioned above. Petitioner and Mark
16  Asami arrived in Department 61 before the Honorable judge
17  Petrucelli on August 23, 2018 for preliminary hearing, Petitioner
18  was held to answer for the charges mentioned above (see
19  exhibit C page 141-143). Petitioner arrived in Department 31
20  before the honorable judge Idiart and trial counsel handed
21  Petitioner an amended charge of Attempted Murder and an
22  additional gun enhancement PC 12022.53(c)(see exhibit D page
23  1-5). Petitioner immediately requested for new counsel (see
24  exhibit E page 8-15 marsden hearing), Petitioner's marsden hearing
25  was denied, and he was bound over for trial.
26      On or about December 28, 2018, Petitioner was playing
27  cards in his "jail unit", when Fresno Police Detective Eden
23  Cerda, and two unknown officers, "raided his jail cell" looking

22

1  for evidence of "witness tampering". Petitioner received the search
2  Warrant from trial counsel (see exhibit F page 1-16), the Fresno Police
3  Detectives recovered a "Jailhouse Kite" from Petitioner's "Jail Cell".
4  On February 19, 2019, Petitioner and trial counsel were scheduled
5  for trial and was initially assigned to the honorable judge Skiles for
6  trial but trial counsel moved to disqualify the honorable judge Skiles
7  pursuant to California Civil Procedure § 170.6 (see exhibit G).

8      The motion was granted, therefore, Petitioner and trial
9  Counsel arrived in Department 52 before the Judge Cardoza, just
10  9 months and 17 days, prior to her (Judge Cardoza) signing the
11  search warrant, that gave rise to the underlying charges
12  Petitioner was currently on trial for (revert to search warrant,
13  then see trial brief exhibit H pg 1-9). Upon arrival; Judge Cardoza
14  made a disclosure consistent with the Judicial ethics canon 3E
15  that "her son is an Attorney with the District Attorney's
16  office", however, the honorable Judge Cardoza failed to dis-
17  close "her extrajudicial association with the underlying case
18  that was set before her"; Judge Cardoza also failed to recuse
19  herself from the underlying case with regard to those extreme
20  facts. Petitioner or trial counsel were unaware of Judge
21  Cardoza's extrajudicial relationship with the underlying case,
22  throughout the entire duration of the proceeding. (see exhibit I pg 508)
23      On or about February 26, 2019, District Attorney Mr.
24  Walters submitted a motion in limine, requesting the court to
25  admit the "Jailhouse Kite" in the middle of trial. Trial
26  Counsel objected, then submitted a Prosecutorial Misconduct motion,
27  however, the honorable judge Cardoza held a 402 hearing, then granted
28  the District Attorney Mr. Walters request and denied trial

counsel's prosecutorial misconduct motion. Petitioner was found guilty March 5, 2019, the next day March 6, 2019 Petitioner began the gang enhancement trial. During pre trial motions, the District Attorney Mr. Walters submitted another in limine motion, this request, was a request asking the court, "to take picture's of tattoo's" that was on Petitioner's body. Petitioner requested a marsden hearing asking for new counsel (see exhibit J page 1607-09).

The marsden hearing was denied, and the honorable judge Cardoza granted Mr. Walters second in limine motion to photo-graph alleged gang tattoo's, so the District Attorney Mr. Walters, can "show the jurors and bolster his case", in efforts to convict Petitioner on the gang enhancement charge. Petitioner felt he was being treated like an "animal" or some type of "physical form object", therefore, Petitioner refused and made a verbal objection (see exhibit K page 1626-1628). The honorable judge Cardoza stated "the court will allow, and the court has granted the prosecution's motion. In order for that to take place, the law enforcement is authorized to use reasonable force to conduct it's inspection" (see exhibit K page 1627 lines 5-8).

During the lunch hour, Petitioner was escorted by the court's bailiff and was taken to Fresno County Jail hold-ing tank, then was told to "strip out" by one of the correctional officers. Petitioner positioned himself in a defensive position and refused, Detective Ron Flowers relieved Petitioner from the altercation, Petitioner was unharmed during the "stand off" as no further action took place. (Mr. Walters, Robert Fry, Ron Flowers, Ms. Stephens, and Ms. Gomez, and a unknown individual were

24

correctional officers whom were there, Mark Asami waited inside Department 52)

On March 7, 2019, trial counsel advised Petitioner and the court that, "he (Mr. Asami) made a fairly large error and would be filing a motion for a new trial based on the admitted error" (see exhibit L page 1810-11). Petitioner advised Mark Asami that, "he wants new counsel to draft the new trial motion", trial counsel advised Petitioner to "write down everything you felt wasn't fair, and I'll submit your issues with my motion", therefore, Petitioner wrote down a pattern of prejudicial errors, then asked his then girlfriend (Felicia Edwards) to type it out. The honorable judge Cardoza declared a mistrial for the gang enhancement charge on March 12, 2019, the honorable judge advised trial counsel and Petitioner, that "the motion for new trial had to be submitted on May 24, 2019".

Felicia Edwards met with Mark Asami at the Fresno County Superior Court and gave Mr. Asami a copy of Petitioner's claims, "he expected new counsel to review". Mark Asami then submitted Petitioner's claims to the court, along with his (Mr. Asami) motion (see exhibit M pages 1-15), Petitioner was not at this court hearing. On June 10, 2019, the honorable judge Cardoza presided over Petitioner's new trial motion hearing. The honorable judge Cardoza held a marsden hearing to address Petitioner's Ineffective Assistance of Counsel Claim, however, Petitioner never waived his right to counsel, nor did Petitioner request to represent himself. In any event, Petitioner was denied new counsel and the honorable judge Cardoza, proceeded to address the merits of

25

1   Petitioner's claims that was typed and submitted to the
2   court (see exhibit N page 2142). Petitioner's new trial motion
3   was denied.
4        Before Petitioner was sentenced, he had a probation
5   interview with a probation officer. Petitioner explained that,
6   "he was misguided by trial counsel, and everything was in
7   favor of the District Attorney, as Petitioner was Railroaded"
8   (see exhibit O). On July 26, 2019, Petitioner arrived in
9   Department 52 before the honorable judge Cardoza. The
10  honorable judge Cardoza addressed Petitioner's statement, with
11  regard to the probation report. Petitioner at this point, was
12  oppressed and therefore expressed his thoughts (see exhibit P
13  page 2308-10), Judge Cardoza sentenced Petitioner to the
14  maximum sentence of 29 years (see exhibit Q Abstract of
15  Judgment).
16       Petitioner was sent to prison August 6, 2019,
17  Petitioner was then state appointed appellate counsel on or
18  about the month of December 2019. Petitioner conversed with
19  appellate counsel (Athena Shudde) via letters, explaining to
20  appellate counsel, that "the initial gun possession charge
21  Petitioner was acquitted of, is involved with the under-
22  lying case", Petitioner then mailed appellate counsel, a
23  copy of trial counsel's drafted Traverse Motion. Appellate
24  Counsel advised Petitioner that, "she cannot argue issues that
25  are not apart of the appellate record." Appellate counsel
26  filed a motion to augment, because their were missing
27  portions of the trial transcripts (see Appendix A').
28       Petitioner immediately noticed that, there were

26

1 missing information, that was not included in Petitioner's
2 transcripts. Therefore, Petitioner contacted his then girlfriend
3 (Felicia Edwards) and asked her to "mail him a copy of
4 the search warrant", sense she (Ms. Edwards) was initially served
5 with the search warrant prior to the execution of the
6 search. Petitioner recieved the search warrant in the month
7 of June, Petitioner immediately noticed the honorable judge
8 Cardoza's signature on the front page of the search warrant,
9 Petitioner immediately filed a habeas corpus petition in the
10 Superior Court county of Fresno July 6, 2020, appellate counsel
11 filed a wende brief requesting the court of Appeal to
12 review the trial record to determine if there are any
13 arguable issues.
14      Appellate counsel also advised Petitioner of his right
15 to file a supplemental brief, therefore, Petitioner filed the
16 supplemental brief, arguing the issues that were only in
17 the trial court record, this was also filed on July 6, 2020.
18 Petitioner filed the habeas petition arguing judicial bias, however,
19 Petitioner at this point, only had 5 pages of the search
20 warrant, and Ms. Edwards said, "she only was given 5 pages
21 of the search warrant". Petitioner contacted Mark Asami
22 and advised him about "the conflict of interest with the
23 honorable judge Cardoza", Petitioner asked Mr. Asami was he
24 "aware of this issue?", Mr. Asami stated "No". Petitioner
25 requested a full copy of the search warrant, and he also
26 reminded Mr. Asami that, "him or Jeremy Snell, never
27 gave him a copy of the search warrant regarding his
23 underlying case".

27

1    Mr. Asami advised Petitioner that, "he will mail him
2    a copy of the search warrant". After waiting a couple of
3    weeks, Petitioner did not recieve no mail from Mr. Asami,
4    therefore, Petitioner called his supervisor Mr. Alveraz and
5    left a voicemail advising him, "of the full copy of the
6    search warrant that he never recieved from Mark Asami". Five
7    days later, Petitioner recieved a full copy of the search warrant
8    and a letter from Mr. Asami (see exhibit #21 pg 1-2). On or
9    about November 10, 2020, Petitioner has seen the full copy of
10   the search warrant for the first time. Petitioner's appeal was
11   affirmed on or about June 14, 2021, However, Petitioner did
12   not file a petition for review in the California Supreme Court,
13   because Petitioner was challenging that "entire judgment on
14   Habeas Corpus". Because the honorable judge Cardoza, sat as an
15   disqualified judge throughout the duration of the trial
16   proceeding, and the appellate record did not show that,
17   because Petitioner's transcripts were manipulated. (see Appendix B)
18       Petitioner filed a habeas corpus petition in the
19   Court of Appeal Fifth District December 13, 2021, Petitioner
20   later filed all previously denied habeas corpus petitions from the
21   Superior Court, to the Fifth District Court of Appeal (see procedural
22   exhibit #9 page 1-15), Petitioner was denied Justice in the state
23   Courts. To support Petitioner's contentions, he respectfully request
24   that the Appellate record be admitted as an exhibit, so that
25   this honorable court to take judicial notice of the omitted search
26   warrant, that was not apparent from the trial court record.
27
28

Argument

## I.

THE AFFIANT JOHN MENDES PROVIDED FALSE STATE-MENTS OF MATERIAL FACTS AND INTENTIONALLY OMITTED A MATERIAL FACT FROM THE AFFIDAVIT SUPPORTING THE SEARCH WARRANT. THE AFFIDAVIT IS INCOMPLETE AND ILLEGAL WHICH VIOLATED PETITIONER'S FOURTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION. PETITIONER WAS NEVER PROVIDED A FULL AND FAIR OPPORTUNITY TO SUPPRESS EVIDENCE IN STATE COURT PROCEEDINGS

The thrust of John Mendes "STATEMENT OF PROBABLE CAUSE", sets forth a series of different crimes. First, the stolen gun theft, along with the GMC DENALI truck, then the gun possession charge Petitioner was in custody for at the time of his (John Mendes) investigation. John Mendes entire investigation derived from Conjecture, guesswork, and probabilit-ies which became a recipe of a reckless disregard for the truth. Petitioner was found Not Guilty for the stolen 380.Cal Ruger, therefore, all the information that consist of the "stolen gun theft" must be omitted.

John Mendes spoke with Phillip Montano right after the interview with Vince Movesian (see exhibit R page 32,41,42), Petitioner contends that, this interview was not included in the affidavit, This was a material fact that should have been on page 9 starting at line 14 of the search warrant (revert to search warrant). Petitioner further contends that,

29

1    either John Mendes had a discussion about Phillip Montano with

2    the honorable judge Cardoza or John Mendes intentionally

3    omitted the material fact with a reckless disregard for

4    the truth.

5        John Mendes created a six pack photo line up that

6    was unduly suggestive. John Mendes created a six pack photo

7    line up that contained 4 dark skin men and 2 light skinned

8    men, having knowledge that Petitioner is "fairly light skinned."

9    If the witness had a memory of a "light skinned" black

10    man as the suspect, his only options would be numbers

11    4 and 6. This tactic narrowed the six pack photo line up,

12    to a "two pack photo line up" (see exhibit S). John Mendes

13    and Brandon Brown circumvented Petitioner's Sixth Amendment

14    right to counsel when they interviewed Petitioner, knowing

15    that he was in custody for the stolen 380.cal Ruger that

16    was "inextricably intertwined" in their investigation at the

17    time of the interview. Petitioner was represented by counsel

18    Linden Lindahl at the time of the interview with detectives,

19    and although Petitioner waived his right to counsel during

20    the interview with detectives, such intentional waiver must

21    be made on the court record.

22        Petitioner contends that, the totality of John Mendes

23    reckless conduct deprived him of his personal liberty by violating

24    his fourth amendment of the United States Constitution. Petitioner

25    had nothing to do with the stolen gun theft, as he was found not

26    guilty of the stolen 380.cal Ruger.

27        POINTS, AND AUTHORITIES

28        In Franks v. Delaware (1978) 438 U.S. 154, 155-157, the

United States Supreme Court held that "a defendant may challenge the veracity of a facially valid warrant affidavit on a substantial preliminary showing that 1) the affiant made statements that were deliberately false or in reckless disregard of the truth; and 2) the affidavit's remaining content is insufficient to justify a finding of probable cause. The Fourth Amendment requires that a hearing be held, where such a showing is made". The rule enunciated in Franks is, moreover, applicable to affidavits marred by omissions of fact see U.S. v. Lefkowitz (9th Cir. 1980) 618 F. 2nd 1313, 1317

The entire point of the Fourth Amendment's search warrant requirement is that inferences be made and conclusions be drawn by the magistrate, not the officer seeking the warrant. Indeed, the failure of the officer to set forth the facts which form the basis for his opinion can be evidence of reckless conduct. See U.S. v. Alvarez (5th Cir. 1997) 127 F.3rd 372, 374.

Relying on Brewer v. Williams, 430 U.S. 387, 97 S.Ct. 1232, many courts have held that once the right to counsel attaches with respect to a charged offense, it carries over to "closely related" but uncharged crimes. The reasoning underlying this exception is consistent with the purposes and protections of the Sixth Amendment. When the pending charge is "so inextricably intertwined" with the charge under investigation, "the right to counsel" for the pending charge cannot be constitutionally isolated from the uncharged offense" Hines 963 F.2d at 257. "To hold otherwise ... would allow the government to circumvent the Sixth Amendment right to counsel merely

by charging a defendant with additional related crimes" after questioning him without counsel present. In re Pack, 616 2.d at 1011; United States v. Arnold, 106 F.3d at 37-41 (CA 3 1997). Once the material misrepresentations of fact are deleted and the material omissions of fact are added to the challenged affidavit, the probable cause analysis must follow the "totality of the circumstances test" see Illinois V. Gates (1983) 462 U.S. 213, Probable cause to issue a search warrant is found by looking at the "totality of the circumstances" contained within the four corners of the affidavit (id at 237). However, the court in Gates also warned that the Magistrate must be provided with enough information to allow him to determine whether he is simply being provided with the "bare conclusions of others". (id at 239). "Suppression therefore remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth" see United States v. Leon (1984) 468 U.S. 897, at 923. Because the presiding trial judge was also the magistrate whom signed the search warrant, the entire affidavit is suspect, under these circumstances Stone v. Powell general prohibition does not apply see e.g. Herrera v. Lemaster, 225 F.3d 1176, (2000). Petitioner respectfully request an evidentiary hearing due to the omissions, and false statements there made to mislead the magistrate. See Lawhorn v. Allen, 519 F.3d at p.1287 (11th cir. 2008); Franks v. Deleware, 438 U.S. 154, 98 S.ct. 2674, 57 L.Ed.2d 667 (1978).

32

Argument

# II.

PETITIONER WAS DENIED EQUAL PROTECTION OF THE LAWS DUE TO HIM BEING DENIED HIS DUE PROCESS RIGHT TO A FAIR IMPARTIAL AND DISINTERESTED JUDGE. UNITED STATES CONSTITUTION FOURTEENTH AMENDMENT EQUAL PROTECTION CLAUSE VIOLATION. JUDICIAL BIAS

The honorable judge Cardoza had a ethical obligation to disclose the fact that, "she (Judge Cardoza) was in judicial capacity acting as Magistrate and participated in a extra-judicial discussion with John Mendes whom is a party to the underlying proceeding". As a result of the disclosure, the honorable judge Cardoza had a ethical responsibility to recuse herself from the underlying case. Petitioner contends that, the honorable judge Cardoza's failure to disclose and recuse as mentioned, was a gross deviation of the California Judicial Ethics Canons, California Civil Procedure $170.1 statutes, trial court rules, Court Administration rules, state and Federal Constitution of laws. Petitioner further asserts that, the committed structural error denied Petitioner procedural due process of law.

With the honorable judge Cardoza sitting as presiding trial judge, John Mendes whom was the affiant and sat at Counsel's (Mr. Walters) table throughout the duration of the trial proceeding, and District Attorney Mr. Walters prosecuting the underlying case, it's fair to say "Petitioner was

33

fighting his case against the Prosecutions "entire team"".
Judge Cardoza bolstered the state's case, when she (Judge
Cardoza) allowed inflammatory evidence in the middle of
Petitioner's underlying case, the "Jailhouse Kite" was evidence
that stemmed from an unrelated charge, and the "Jailhouse
Kite" materially and prejudicially affected Petitioner, because
it violated the fundamental aspects of fairness, which also
violated the fourteenth amendment due process clause.

Petitioner further contends that, the "Jailhouse Kite"
violated his fifth amendment Constitutional right to be free
from self incrimination, which deemed the "Jailhouse Kite"
inadmissible evidence. The "Jailhouse Kite" was equivalent
to wearing a "Jailhouse Jumpsuit", due to the presentation
of it's admissibility, coupled with Petitioner's own testimony,
which he "testified to a series of Jailhouse activity" trying
to explain to the jurors, "how inmates communicate during
a lockdown", which is why "inmates call it a Jailhouse Kite"
instead of reffering the phrase as e.g "note, letter, etc etc."
The "Jailhouse Kite" contributed to Petitioner's conviction, there-
fore, the honorable judge Cardoza's ruling with regard to allowing
the inflammatory evidence, violated Petitioner's Fifth and
Fourteenth Amendments State and Federal due process rights to
a fair trial that is established in the United States Constitu-
tion.

The honorable judge Cardoza had ample opportunity to
recuse herself from Petitioner's underlying case, especially
when she (Judge Cardoza) presided over Petitioner's underlying
new trial motion proceeding. Petitioner contends that, the

34

1   totality of these circumstances, denied Petitioner's substantive

2   due process of law. The honorable judge Cardoza was faced

3   with direct disputed facts, that involved her own conduct.

4   Judge Cardoza was in a position, to revist the investigative

5   phase of Petitioner's underlying case (revert to Petitioner's new

6   trial motion page 1-15), Petitioner now directs this honorable

7   Court's attention to the state's response (see exhibit T page 823-27).

8       The honorable judge Cardoza was placed back into her (Judge

9   Cardoza) previous role acting as Magistrate, Petitioner contends

10  that, Judge Cardoza's rulings would not comport with due process,

11  which materially and prejudically affected Petitioner and denied

12  him substantive due process of law. Petitioner invites this honorable

13  court attention to a detailed pattern of how the honorable

14  judge Cardoza involved herself directly in a chain of events,

15  that involved her (Judge Cardoza) own conduct. First, John

16  Mendes and Judge Cardoza had a discussion on or about May 2,

17  2018 (revert to search warrant). Secondly, John Mendes omitted

18  Phillip Montano's recorded statement from the affidavit.

19       Petitioner contends that, there exist a high probability

20  that the honorable judge Cardoza could have asked John Mendes,

21  "where is the victim to the investigation?", the affidavit specifies

22  an "assault with a firearm investigation", it's plausible for

23  a Magistrate to determine whether he or she is simply being

24  provided with the "bare conclusions of others", when

25  considered in their analysis to determine whether probable

26  cause exist. Or to the contrary, Judge Cardoza was unaware

27  that, "John Mendes spoke with the alleged victim Phillip

28  Montano right after the interview with the state's star witness

35

1  Mr. Movesian". Then the honorable judge Cardoza, would shift

2  herself in a position to "protect her (Judge Cardoza) ruling

3  with regard to signing the search warrant."

4     For example, John Mendes omitted Phillip Montano's state-

5  ment from the affidavit. But John Mendes also had a discussion

6  with Judge Cardoza over the telephone (revert back to search

7  warrant), there's a high probability the omitted material fact

8  "could have been apart of that discussion", there also exist an

9  equal weight to a high probability, John Mendes just outright

10 misled judge Cardoza. And if John Mendes didn't tell Judge Cardoza

11 about the interview with Phillip Montano, she in fact learned

12 of that, when she (Judge Cardoza) reviewed Petitioner's new trial

13 motion (revert to Petitioner's new trial motion page 3-5), the honorable

14 judge Cardoza, does not have a blind eye to Petitioner claims.

15 The honorable judge Cardoza was faced with these issues from

16 May 24, 2019, when Mark Asami submitted the motion, all the way

17 until June 10, 2019, the day of the new trial motion hearing.

18     Petitioner contends that, he was denied new counsel

19 for the general purpose of, "keeping a fresh pair of eyes away

20 from the underlying case". Because recieving new counsel, would

21 require a thorough review of the facts, and competent

22 counsel would normally begin with a thorough review of

23 the search warrant, if he or she were to file an effective

24 new trial motion, which would of course "discover Judge

25 Cardoza's signature on the front page of the search warrant".

26 The trial court record can reflect that, Petitioner never

27 waived his right to counsel on the record, and although

28 Petitioner had claims that was typed and submitted to the

36

court, Judge Cardoza had a ethical responsibility to conduct a Faretta inquiry.

     This is necessary, so the record can reflect that, "Petitioner understands what is going on and that he knows what he is doing, and his choice is made with eyes open." The denial of counsel materially and prejudicially affected Petitioner which denied him substantive due process of law. The honorable judge Cardoza then sentenced Petitioner to the maximum sentence of 29 years without considering any mitigating factors that justified far less time, than the sentence given. There was never an actual victim produced at trial or any other proceeding, nobody was hurt, there were No bullet holes or fragments found at the Sierra Inn Hotel establishment, Phillip Montano is last seen "walking away", detectives never had any "tangible facts, that prompts a vicious" investigation that amounted to nothing more than, "one shot fired, nobody on seen upon police arrival", this case fits more in the catagory of a negligent discharge of a firearm, and a gun possession charge.

     Considering all the facts related to the shooting, coupled with "how the state cheated, and robbed him of his personal liberty (Physical and fundamental rights)", under these standards of a built in bias, substantially affected the integrity of a judicial proceeding. Even after Petitioner was sentenced, the honorable judge Cardoza manipulated Petitioner's Abstract of judgment form (see exhibit U motion to correct and Prison computation sheet) Petitioner contends that, this materially and prejudicially affected Petitioner, because the added

1  gang enhancement charge, boosted Petitioner's prison points
2  to an additional six points (revert back to prison computation
3  form), which Petitioner contends, secured him to a level 4
4  prison yard. Petitioner believes "this was not an accident",
5  knowing that, Judge Cardoza was the person whom declared a
6  mistrial March 12, 2019.
7      Petitioner contends that, the combination of the patent
8  conflict of interest of Judge Cardoza, coupled with Judge Cardoza's
9  adverse rulings, forms a mixture of; Prejudgment, actual bias, personal
10 bias, personal interest in financial gain.

11

12      POINTS, AND AUTHORITIES
13      Petitioner has a constitutional Due process right to a
14 fair impartial and disinterested judge when the state officials
15 seeks to deprive him of his personal liberty see Marshall v.
16 Jerrico, Inc., 446 U.S. 238, 64 L.Ed 2d 182, 100 S.ct. 1610 (1980).
17 "This requirement of neutrality in adjudication proceedings safe-
18 guards the two central concerns of procedural due process, the
19 prevention of unjustified or mistaken deprivations and the
20 promotion of participation and dialogue by affected individuals
21 in the decision making process".(quoting Marshall) see Carey v.
22 Piphus, 435 U.S. 247, 259-262, 98 s.ct. 1042, 1043. The neutrality
23 requirement helps to guarantee that life, liberty, or property
24 will not be taken on the basis of an erroneous or distorted
25 conception of the facts or the law. See Mathews v. Eldridge,
26 424, U.S. 319, 344; 96 S.ct 893, 907, 47 L.Ed 2d 18 (1976).
27 Clearly established Federal law, as determined by the United
28 State Supreme Court Precedence "A fair trial in a fair

1   tribunal is a basic requirement of due process. Fairness of
2   Course requires an absence of actual bias in the trial of
3   Cases. But our system has always endeavored to prevent even
4   the probability of unfairness. To this end no man can be a
5   judge in his own case and no man is permitted to try cases
6   where he has an interest in the outcome. That interest
7   cannot be difined with precision, circumstances and relationships
8   must be considered. This court has said, however, that "Every
9   procedure which would offer a possible temptation to the
10  average man as a judge... not to hold the balance nice, clear,
11  and true between the state and the accused denies the latter
12  due process of law". (quoting Murchison, and Tumey) In re Murchison,
13  349 U.S. 133, 136, 99 L.Ed. 942, 75 S.Ct. 623 (1955); (1927) Tumey
14  v. Ohio, 273 U.S. 510, 535, 71 L.Ed. 749, 47 S.Ct. 437; Larson
15  v. Palmateer (9th. Cir. 2008) 515 F.3d. 1057, 1067 (in accord).
16  By Contrast, the equal protection of laws are vested in the
17  California Judicial Ethics Canons 2A which states in relevant
18  part:" A judge shall respect and comply with the law and
19  shall act at all times in a manner that promotes public
20  Confidence in the integrity and impartiality of the judiciary."
21  Which encompasses an ethical obligation to disclose extreme
22  facts that raises partiality Concerns, and recuse as a result of
23  the disclosure Commentary to California Judicial conduct canon
24  3 " A judge shall perform the duties of Judicial office
25  impartially ".
26  3C (1)(a) " A judge shall disqualify himself or herself in a
27  proceeding in which the judge's impartiality might reasonably
28  be questioned, including but not limited to instances in

39

1  which",

2  3C(1)(a)(c) The judge knows that the judge, individually or as a

3  fiduciary, or the judge's spouse or minor child residing in

4  the judge's household, has a financial interest in the subject

5  matter in controversy or in a party to the proceeding, or

6  any other interest that could be affected substantially by

7  the outcome of the proceeding"

8  3C(1)(c)(i) "a party to the proceeding, or an officer, director,

9  or trustee of a party".

10  3C(1)(c)(ii) "acting as a Lawyer in the proceeding"

11  3C(1)(c)(iii) "known by the judge to have an interest that

12  could be substantially affected by the outcome of the proceeding".

13  3C(1)(e) "The judge has served in governmental employment

14  and in that capacity participated as a judge in a previous

15  judicial position".

16  3C(1)(a)(D) "Disclose on the record the basis of disqualifica-

17  tion".

18  "In determining it's ethical obligations, the court is obliged to

19  follow the text of the canons that make up the code of

20  conduct of California Judge's" see de Jesus Ortega Melendres

21  v. Arpaio, 2012 U.S. Dist. Lexis 91785; also see California v.

22  Kleppe, 431 F. Supp. 1344 (1977) which noted "the judge

23  disqualified himself, reasoning that a member of the judiciary

24  not only had to be impartial but had to appear impartial

25  as well". The honorable judge Cardoza had a ethical respons-

26  ibility to recuse herself from Petitioner's underlying case,

27  and failure to do so was a gross deviation from the

28  California Judicial Ethics Canons". Because the codes of judicial

40

conduct provide more protection than due process requires, most disputes over disqualification will be resolved without resort to the Constitution" quoting Caperton V. A.T Massey Coal Co. (2009) 556 U.S. 173, L.Ed.2d 1208, 129 S.ct 2252 ; also see Bracy V. Gramley, 520 U.S. 899, 904-05, 117 S.ct. 1793, 138 L.Ed.2d 97 (1997). The California Supreme Court was objectively unreasonable when the court didn't apply Petitioner's claim to Chapman V. California, 386 U.S. 18, 23, 17 L.Ed.2d 705, 875 S.ct. 824 " the right to an Impartial judge is a Constitutional right, so basic to a fair trial that's it's infraction can never be treated as harmless error". "Structural error occurs when a judge with actual bias against a defendant presides at his trial" see Arizona V. Fulminante, 499 U.S. 279, 309-10, 111 S.ct. 1246, 113 L.Ed. 2d 302 (1991). Petitioner "should be made aware of the dangers and disadvantages of self representation, so that the record will reflect and establish that he knows what he is doing and his choice is made with eyes open" Faretta V. California, 422 U.S. 806, 835 ; also see United States V. Moskovits, 86 F.3d 1303 (CA 3 1996). " As a practical matter, the motion for a new trial motion is a defendants last opportunity for an unconstrained review on the merits of evidence against him. An effective motion for a new trial ordinarily requires a lawyer's understanding of legal rules and his experience in presenting claims before a court" Menefield V. Borg, 881 F.2d 696-99 (9th Cir. 1989); Bell V. Hill, 190 F.3d 1089 (9th Cir. 1999). Further, such actual denial of counsel is presumed prejudicial see United States V. Cronic, 466 U.S. 648, 104 S.ct. 2039 (1984). Petitioner has a Constitutional right to counsel at a new trial motion hearing,

1    and the honorable judge forced Petitioner into representing

2    himself, and also forced trial counsel into standby counsel." If

3    a Petitioner convinces the court by a preponderance of the

4    evidence that he neither had counsel nor properly waived his

5    constitutional right to counsel, it is the duty of the court to

6    grant the writ" see Pazden V. Mauder, 424 F. 3d 303 (CA 3 cir.

7    2005). Petitioner asserts that, even District Attorney Mr. Walters

8    noticed the "stark disconnect between Petitioner and trial

9    counsel" (see Exhibit T page 825 lines 20 ending at page 826

10   line 16), Petitioner contends that, the District Attorney. Mr. Walters

11   motion supports his contentions raised in the present petition

12   that arrives to the honorable court. The ninth circuit and other

13   circuit courts recognized instances in which recusal was mandated.

14   The Federal statutes are more stringent and vigorous than State

15   statutes; see U.S. v. Hernandez, 109 F. 3d 1450, 1453 (9th Cir. 1997),

16   U.S. v. Arnpriester, 37 F. 3d 466, 467 (9th Cir. 1994) "a party admitted 20-

17   year friendship with judge and judge failed to disclose". Alleged facts

18   sufficient if reasonable person with knowledge of facts would conclude

19   impartially might reasonably be questioned; or impede impartiality

20   of judgment see Ronwin v. State Bar of Arizona, 686 F. 2d 692, 700 (9th

21   Cir. 1981). Reflecting on the California Judicial Ethics canons

22   1 A "A judge shall avoid impropriety, and the appearance of

23   impropriety, in all of the judge's activities". The United States

24   Supreme Court held that "investigative and adjudicative powers on

25   the same individuals poses such a risk of actual bias and prejudg-

26   ment that the practice must be forbidden if the guarantee of

27   due process is adequately implemented" see Withrow V. Larkin, 421

28   U.S. 35, 46, 95 S. Ct. 1456, 43 L.Ed. 2d 712 (1975). The record

can reflect that the honorable judge became "so enmeshed in matters involving Petitioner as to make it appropiate for another judge to sit" See Johnson V. Mississippi, 403 U.S. 212, 215-16, 91 S.Ct. 1778, 29 L.Ed. 2d 423 (1971). The honorable judge Cardoza was faced with a temptation... not to hold the balance nice, clear and true between Petitioner and the State see Tumey V. Ohio, 273 U.S. 510, 532, 47 S.Ct. 437, 71 L.Ed. 749 (1927). The United States Supreme Court held long ago that a "fair trial in a fair tribunal is a basic requirement of due process" In re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955). This case presents an especially troubling example of defective fact-finding because the facts the honorable judge Cardoza found in his new trial motion, involved her own conduct and she based those findings on her untested memory and understanding of the events she acquired "acting as Magistrate whom authorized the search warrant that gave rise to the charges Petitioner was challenging in his new trial motion" See Buffalo V. Sunn, 854 F.2d 1158, 1165 (9th Cir. 1988). Finding error when the court relied on "personal knowledge" to resolve disputed issue of fact Murchison supra, 349 U.S. at 138. Judge Cardoza could have already been aware of the absence of Mr. Montano and if she was, she relied on her untested memory of what John Mendes told her, or if Judge Cardoza was unaware of the interview with Mr. Montano, her position then would be, to protect her ruling and denying Petitioner's claims just to rush him off to the sentencing phase. In either case, Judge Cardoza decisions as to his claims would not comport with due process. Johnson supra 403 U.S. at 215-16. Having been apart of the investigative process, a judge cannot be in the very nature of the proceedings, wholly disinterested in the conviction or acquittle of those accused. A judge must withdraw

43

where she acts as part of the accusatory process, Murchison, 349 U.S. at 137. Due process requires recusal where the judge has a direct, personal and substantial pecuniary interest in convicting a defendant Tumey, supra 273 U.S. at 523, 532. Moreover, Petitioner must be granted an opportunity to present his case to a court unburdened by any "possible temptation... not to hold the balance nice, clear and true between the State and the accused" Tumey V. Ohio, 273 U.S. 510, 532, 47 S.Ct. 437, 71 L.Ed. 749 (1927). The Due Process Clause entitles Petitioner to "a proceeding in which he may present his case with assurance" that the presiding trial judge is "predisposed to find against him" Marshall V. Jerrico. Inc, 446 U.S. 238, 242, 100 S.Ct. 1610, 64 L.Ed. 2d 182 (1980)

1                   Argument

2                     III

3    DISTRICT ATTORNEY DANIEL WALTERS ACTED AS

4 A WITNESS IN HIS OWN CASE, MR. WALTERS VIOLATED

5 PETITIONER'S FITH AMENDMENT RIGHT TO BE FREE

6 FROM SELF INCRIMINATION, COMPULSORY PROCESS

7 CLAUSE, WHICH ULTIMATELY VIOLATED HIS FIFTH

8 AND FOURTEENTH AMENDMENT'S STATE AND FEDERAL

9 RIGHT TO A FAIR TRIAL. PROSECUTORIAL MISCONDUCT

10 BASED ON VINDICTIVE PROSECUTION

11

12        This is a case of, vindictive Prosecution that derived

13 from the gun possession charge Petitioner was initially acquitted

14 of, on August 18, 2018. District Attorney Mr. Walters was initially

15 the prosecuting attorney in that case; However, Mr. Walters

16 knew the gun possession charge was a "weak case", therefore,

17 after preliminary hearing, Mr. Walters handed the gun possession

18 case over to a colleague of his named Mr. Chico. As mentioned,

19 Petitioner was acquitted by jury, five days later Petitioner

20 arrived in Department 61 before the honorable judge Petrucelli

21 for a preliminary hearing. During this hearing, Petitioner

22 realized that "Mr. Walters presented this case as a gang

23 case", which initially stemmed from false statements

24 from Malika Senegal, (a witness whom was the state's star

25 witness in the gun possession charge Petitioner was

26 initially acquitted of).

27        Mr. Walters was so serious in presenting the under-

28 lying case as a "gang case", he (Mr. Walters) even invited

1  detective Robert Fry " to get off the witness stand, walk
2  over to where Petitioner was seated and tattoo checked him",
3  right in the middle of the preliminary hearing. During the
4  Preliminary hearing, there were No evidence presented that
5  proved an Attempted Murder charge. Petitioner contends that,
6  the evidence produced supported a "charge of negligent discharge
7  of a firearm, and possession of a firearm". In any event,
8  Petitioner was held to answer on the following charges; Assault
9  with a firearm, negligent discharge of a firearm, possession of
10  a firearm by a felon, carrying a loaded firearm in public, and
11  additional enhancements of PC 12022.53(c), PC 186.22.

12      The detectives and Mr.Walters knows "Phillip Montano is
13  not beneficial to their case", detectives also has a recorded
14  statement from Phillip Montano. Sense Mr.Walters has "revenge
15  on his mind", Petitioner was never offered any deals, he was
16  forced to go to trial, especially when Mr.Walters added an
17  additional charge of Attempted Murder and an additional enhanc-
18  ement of PC 12022.53(c). Mr. Movesian, whom was the state's star
19  witness, tells Mr.Walters and John Mendes that, "he is in fear for
20  his life, because people have been approaching him in the Parkway
21  area about the shooting case", Mr.Movesian, whom is a "meth
22  addict", Never called 911 throughout these alleged incidents. Mr.
23  Movesian had hidden motives, he wanted to get out of the
24  Parkway area (which was a drug infested area), and relocated
25  to a "five star hotel". Mr.Movesian allegations got so series,
26  Petitioner's "Jail cell" gets raided for witness intimidation
27  material.
28      Detective Eden Cerda recovered a "Jailhouse Kite"

46

from Petitioner's Jail cell. February 19, 2019, Petitioner began
his trial, and fortunately for Mr. Walters, he ended up in
a courtroom, where the judge was a "member of his team".
Mr. Walters had a ethical responsibilty to disclose the conflict
of interest, Mr. Walters, a sovereignty whose obligation to govern
impartially, utilized this "extrajudicial relationship" to his
advantage. Mr. Walters wasted No time in changing Phillip
Montano's name into a "John Doe", before the trial started
(see exhibit V). The honorable judge Cardoza (whom is secretly
familiar with the underlying case), never questioned Mr. Walters
and asked him "why would this be necessary if the informa-
tion has Phillip Montano on the charging information, further-
more you have Phillip Montano's name on the witness list
scheduled to be called as a witness, on your behalf".

        As soon as Mr. Walters got up out of his chair to begin
his opening "argument", the first thing he said was "Mr. Garrett
tried to shoot John Doe in the head", coupled with the
play/pause of the video footage. Petitioner must note, the
opening statements were not apart of the trial transcript
(see exhibit W), however, Petitioner raised this issue in his
new trial motion and appeal. In any event, Mr. Walters mis-
represented the facts, there were No witnesses whom stated
"Petitioner aimed at Mr. Montano's head", from the investigation
to the preliminary hearing, it was alleged that, "the gun was
aimed at Mr. Montano's upper torso" (see interview with Mr.
Movesian, and preliminary hearing see exhibit X).

        This is how Mr. Walters illustrated the underlying case
of Attempted Murder, he distorted the "upper torso" accusa-

47

1   tion and hieghtened it to a "head shot" statement, just to

2   secure a conviction for Attempted Murder, Mr. Walters advocated

3   his case, by injecting statements that were never furnished on

4   the record, which typically amounted to blatant hearsay. Days

5   later, Mr. Walters filed a in limine motion, requesting the court

6   to admit the "jailhouse kite" in the middle of trial. The

7   honorable judge Cardoza granted Mr. Walters in limine motion, Petitioner

8   contends that, the "Jailhouse Kite" was inflammatory and irrelevant

9   to the underlying case, furthermore, "it was evidence relating to

10  another charge, unrelated to the charges Petitioner was currently

11  on trial for", despite the multiple errors trial counsel committed,

12  Mark Asani made a few valid points regarding the "Jailhouse

13  Kite" (see exhibit Y page 1128-29), the "Jailhouse kite" never made

14  it out of the Fresno County Jail, as it was found in Petitioner's

15  Jail Cell.

16       Due to the "Jailhouse Kite" that was alleged to be

17  evidence of "witness tampering", trial counsel established that

18  "witness intimidation" or "witness tampering" should not be

19  mentioned before the jury (see exhibit Z page 1133 exhibits will

20  now start with numbers). Petitioner testified to the "Jailhouse

21  Kite", and during Mr. Walters re-direct cross examination, he

22  goated Petitioner into "becoming a witness against himself",

23  not for the underlying charges he was on trial for, but for

24  an "additional charge of witness tampering". Petitioner admitted

25  to writing the "Jailhouse Kite" and he also admitted that

26  the Jailhouse kite was reffered to a witness Jared Jackson,

27  whom was a witness on behalf of Petitioner (see exhibit #1

28  page 1228).

Mr. Walters closing argument was basically testimony, that derived from his opening argument. Mr. Walters told jurors it was "Mr. Barrett whom tried to shoot John Doe in the head", in his opening argument, coupled with the play/pause of the video footage. Petitioner contends that, this method shifted the presumption of "Innocent until proven guilty", into Petitioner being "Guilty until proven Innocent", Mr. Walters tried to polish up the committed error in his Closing argument (see exhibit #2 page 1410 lines 13-9 ending at page 1411), knowing that, "he (Mr. Walters) already told jurors it was Petitioner depicted in the video footage", in his opening "argument", coupled with the "head shot" accusation that "Only Mr. Walters said", throughout the duration of the trial proceeding. Petitioner invites this honorable court's attention to the series of "head shot" testimony presented by Mr. Walters (see exhibit #3 page 1412-14), while these statements were made Mr. Walters utilized the play/pause/rewind tactic while injecting misstatements of fact, as an outlet to prove the elements of Attempted Murder.

Mr. Walters stepped on forbidden territory, when he reconstructed Mr. Movesian statement, whom initially stated "the gun was allegedly aimed at Mr. Montano's "upper torso."" Mr. Walters stated the statement was an "inconsistency" (see exhibit #4 page 1463 lines 9-10), Mr. Walters further stated "the video shows it clear as day, shooting chest up to head" (revert back to exhibit 4 page 1463 line 11). Petitioner contends that, Mr. Walters attempt to persuade the jurors to consider Mr. Movesian "upper torso" accusation as an "inconsistency", just to

49

inject his (Mr.Walters) accusation of the "head shot"
testimony, was improper and a misrepresentation of the
facts, which materially and prejudicially affected Petitioner,
because it violated the fundamental aspects of fairness that
is established in the fourteenth amendment.

     Petitioner further asserts, there was No evidence to
show where the gun was pointed, the video footage was so
poor in quality, all a person can see, is the "muzzle flash
from the gun", there was no bullet holes or fragments found
at the Sierra Inn Hotel, which was located right behind Mr.
Montano. Mr.Walters doesn't even know where the gun was
pointed (see exhibit #5 page 1416 line 6-7), Mr.Walters rested
his argument on mere speculation, guesswork, and conjecture
which became a recipe that disproved the elements of
Attempted Murder. Mr.Walters circumvented Petitioner's Compul-
sory process, by labeling Phillip Montano as a "John Doe",
because Petitioner was unable to cross examine "John Doe",
and ask him pertinent questions, such as, "where was the
gun pointed?", or "why didn't you wait for officers to arrive
if you were shot at" etc etc.The right of an accused in a
criminal trial to due process is, in essence, the right to a
fair opportunity to defend against the State's accusations.

     Mr.Walters also told jurors that, "Petitioner was
tampering with witnesses", a statement that jurors were never
suppose to hear, due to the admissibilty of the "Jailhouse Kite"
(see exhibit #6 page 1472 lines 21-22). Mr.Walters used Petitioner's
testimony (regarding the "Jailhouse Kite"), against him which
violated Petitioner's Fifth Amendment right to be free from

50

1  self incrimination because Petitioner just admitted to an
2  additional charge, other than the charges Petitioner was currently
3  on trial for. Petitioner further asserts that, this also prejudic-
4  ially affected him and deprived him of his fifth and
5  fourteenth amendments of State and Federal rights to a fair
6  an impartial trial as applied to the Constitution.
7       Once Mr. Walters rested his case, the case then goes to
8  the juror's. One of the first questions the juror's asked the court,
9  was "We would like to review Charles Garrett's testimony please"
10  (see exhibit #7). The juror's immediately disregarded that request
11  and zoomed in on Petitioner's testimony, specifically the
12  "Jailhouse kite" testimony (see exhibit #8). Juror's were given
13  jury instructions, one inparticular was a "John Doe jury
14  instruction", which stated in relevant part "there's a person
15  named John Doe in this case, the named is used to protect
16  his identity". Petitioner contends that, Mr. Walters utilized
17  improper methods to secure a conviction for Attempted Murder,
18  and Assault with a firearm, which Petitioner contends, was
19  staged".
20       This was not a case where "a man was severly injured", and
21  this certainly wasn't a case where "a dead body was missing", this
22  was a case where "Phillip Montano was roaming the streets of
23  Fresno, doesn't even know that he's being labeled as a "John
24  Doe"", while Petitioner was on trial, fighting for his life. Mr.
25  Walters was not in search for the truth, Mr. Walters was
26  seeking revenge, further, if Mr. Walters was acting in good faith
27  in prosecution of the underlying case, then why didn't he "admit
28  hearsay statements from Phillip Montano" whom the detectives

51

spoke with, right after the interview with Mr. Movesian? (which was also tape recorded), Mr. Walters "made sure to file a motion to admit hearsay statements from Ms. Edwards, and Mr. Movesian if they happen to become unavailable as witnesses" (see exhibit #9 page 413).

   That's because Phillip Montano doesn't benefit his case, so instead, Mr. Walters converts Phillip Montano into a "Jonn Doe", that was "equipped with a jury instruction", admitted a "Jailhouse Kite" in the middle of trial, testified to Petitioner "aiming at John Doe's head" when the shot was fired, told juror's that "Petitioner was tampering with witnesses" (which he goaded Petitioner into self incriminating himself), all in which became a blend of ingredients that misled the jurors and rendered Petitioner's trial fundamentally unfair that violated the Fourteenth Amendment of the United States Constitution. Juror's were unaware of the interview between detectives and Phillip Montano, the juror's didn't know that, "Phillip Montano declined to look at the six pack photo line up", and detectives never asked Phillip Montano "where was the gun aimed when the single round was fired? which body part? if any, where you afraid for your life? why didn't you wait for officers to arrive? etc etc." These type of questions, allows the juror's to anaylize the underlying case from different angles, which would have some impact on the juror's to consider mitigating evidence, that supports lesser offenses.

   Mr. Walters did not prove the elements of Attempted Murder with Facts, Mr. Walters proved Attempted Murder by speculation, guesswork, and conjecture regarding probabilities

52

1  Without sufficient evidence to prove the elements of Attempted

2  Murder, because Mr. Walters presented the underlying case in that

3  fashion, this invited the jurors to inference draw based on

4  speculation, and guesswork, which materially and prejudicially

5  affected Petitioner and denied him due process.

6

7  POINTS, AND AUTHORITIES

8  District Attorney Mr. Walters " represents the people and is

9  presumed to act with impartiality", in the interests of only

10  justice. quoting State v. Reed, 102 wash. 2d 140, 147, 684 P. 2d 699

11  (1984); State v. Fisher, 165 Wn. 2d 727, 202 P. 3d 937 (2009).

12  Prosecution must prove every element based on facts see United

13  States v. Gaudin (1995) 515 U.S. 506, 522-23. Speculation is not proof

14  beyond a reasonable doubt see Brown v. Palmer, 441 F. 3d 347

15  (CA 6 2006), Jury must draw reasonable inference not speculate see

16  Poppell v. City of San Diego, 149 F. 3d 951 (CA 9 1998). Mr. Walters

17  repititive statements of " Mr. barrett tried to shoot John Doe in

18  the head ", typically amount to blatant hearsay about matters

19  not in the record see United States v. Maddox, 156 F. 3d 1281-82

20  " asserting facts that were never admitted into evidence may

21  mislead a jury in a prejudicial way" quoting Berger v. United

22  States, 295 U.S. 78, 84, 55 S.ct. 629, 79 L.Ed 1314 (1935)" This

23  is particulary true when a prosecutor misrepresents evidence

24  because a jury generally has confidence that a prosecuting

25  attorney is faithfully observing his obligation as a representative

26  of a sovereignty". id. at 88, 55 s.ct. 629. Misrepresenting

27  facts in evidence can amount to substantial error because

28  doing so " may profoundly impress a jury and may have

53

a significant impact on the jury's deliberations" See Donnelly V. Dechristofore, 416 U.S. 637, 646, 94 S.Ct. 1868, 40 L.Ed 2d 431 (1974). The Supreme Court of United States has "counselled prosecutors to refrain from improper methods calculated to produce a wrongful conviction" see United States V. Young, 470 U.S. 1, 7, 105 S.Ct. 1038, 84 L.Ed. 2d 1 (1985); Underwood V. Royal, 894 F.3d 1154 (CA 10 2015). The repititive "head shot" accusations deemed Mr. Walters to act as an advocate to his own case see Walker V. Davis, 840 F.2d 834 (CA 11 1988)" In this case, it is reasonably probable that the prosecutor acting as both advocate and witness misled the jury because of the likelihood that the prosecutor's credibility was enhanced by the prestige of his office" [citation] Petitioner has a Constitutional right to cross examine witnesses "John Doe" was not the name on the charging document for Attempted Murder. that's because "John Doe" doesn't exist. "The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations" see Chambers V. Missippi, 410 U.S. 284, 35 L.Ed 2d 297, 93 S.Ct. 1038 (1973); Crawford V. Washington, 514 U.S. 36, 158 L.Ed.2d 177, 124 S.Ct. 1354 (2004). "The opinions of this court show that the right to confrontation is a trial right, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination" see California V. Green, 399 U.S. 149, 157 (1970) Judicial Bias coupled with Mr. Walters misconduct show that the Constitutional errors at Petitioner's trial created a possibility of a conspiracy, between the honorable judge Cardoza and Mr. Walters and that they worked to his actual and

54

substantial disadvantage, infecting Petitioner's entire trial with error of Constitutional dimensions see Ouska v. Cahill-Masching, 246 F.3d 1036, 1050 (7th Cir. 2001); United States v. Frady, 456 U.S. 152, 170, 102 S.Ct. 1584 (1982). Mr. Walters line of questioning with regard to the "Jailhouse Kite" was improper because it violated Petitioner's Fifth Amendment right to be free from self incrimination, see Griffin v. California 380 U.S. 609, 85 S. Ct. 1229, 14 L.Ed. 2d 106 (1965) Mr. Walters utilized Petitioner's admissions to "writing the Jailhouse Kite, and that it was refferred to a witness (Jared Jackson)" whom was a witness on behalf of Petitioner, Mr. Walters accused Petitioner of "witness tampering" which is another crime other than the underlying charges Petitioner was on trial for see United States v. Wolf, 787 F.2d at p. 1099 (CA 7 1986). Juror's used that against Petitioner, which he contends contributed to his conviction see United States v. Bosch, 584 F.2d at p 1123-24 (CA 1 1978), In Hoffman the Supreme Court held that "compelled testimony is self incriminating if reasonable cause exists to believe that the testimony would either support a conviction or provide a link in the chain of evidence leading to a conviction" see quoting Hoffman v. United States, 341 U.S. 341 479, 486-87 (1951); also see United States v. Lumpkin, 192 F.3d 280, 285 (2d Cir. 1999). Mr. Walters additional charge of Attempted Murder was based on vindictiveness, due to Petitioner's previous acquittal, followed by Petitioner's choice to go to trial see United States v. Stokes, 124 F.3d 39, 45 (1st Cir. 1997); United States v. Goodwin, 457 U.S. 3683, 373 (1982). Mr. Walters is a sovereignty whom also had an ethical duty to disclose the conflict of interest of Judge Cardoza, whom was secretly a member

of the prosecutions team see Kyles V. Whitley (1995) 514 U.S. 419, 437 Accordingly, the Brady/Kyles rule extends to all members of "prosecutions team", which includes both investigative and prosecutorial personnel see U.S. V. Morris (7th Cir. 1996) 80 F.3rd 1151, 1170. Mr. Walters had an ethical obligation to learn of those whom actively participate in the investigation or prosecution of a case See Kyles, supra, Morris, supra at 1169. The Brady Principles apply to Petitioner's case, It is well established that a prosecutor is deemed to have "control" over all members of an "investigatory team" and that evidence of extrajudicial relations with the presiding trial judge falls within the scope of the Prosecutions Brady obligation, Kyles, supra, at pp. 437-438 "any favorable evidence known to the others acting on the government's behalf is imputed to the prosecution" United States V. Zuno-Arce (9th Cir. 1995) 44 F.3rd 1420. District Attorney Mr. Walters committed multiple acts demonstrating a classic case of Prosecutorial Misconduct, Petitioner was mauled by the Prosecutions schemes and tactics, and with respect to this honorable court, but "Nobody was dead in this case, there wasn't a dead body missing. This was a case where Phillip Montano was roaming the streets of Fresno, while Petitioner was on trial fighting for his life" Petitioner contends that, the way he was treated was cruel, and horrific, which created a mixture of "Biggotry, and Bias." (respectfully) This is a violation of Petitioner's fourteenth Amendment Equal Protection Clause that is vested in Due process. Mr. Walters entire case was based on Performance, not evidence of Attempted Murder see Jackson V. Virginia, 443 U.S 307 (1979)

56

Argument

## I V

THE TOTALITY OF TRIAL COUNSEL'S REPRESENT-
ATION AMOUNTED TO A COMPLETE DENIAL OF
COUNSEL THAT DEPRIVED PETITIONER OF
FUNDAMENTAL PROCEDURAL DUE PROCESS.
CONSTRUCTIVE DENIAL OF EFFECTIVE
ASSISTANCE OF COUNSEL SIXTH AMENDMENT
VIOLATION

Petitioner was initially represented by Jeremy Snell
from Ciummo and Associates whom later conflicted off
Petitioner's case for unknown reasons. Petitioner was then
appointed Mark Asami also from Ciummo and Associates,
on or about July 19, 2018. Between July 19, 2018 and August
5, 2018 Petitioner was awaiting trial for the stolen 380 Ruger
gun case, whom he was represented by Linden Lindahl (case no.
F18021273), therefore Petitioner's underlying case was post poned.
Petitioner was acquitted on or about August 18, 2018, for the
gun possession charge mentioned above. Petitioner and Mark
Asami conversed about the upcoming preliminary hearing August
23, 2018, during this interview with Mr. Asami, Petitioner advised
him of, what actually took place on the night of March 27, 2018.
Petitioner told Mr. Asami what happened with regard to his car
getting stolen, then he went on to say, "Petitioner was just mad
that his car was stolen right under his nose, and he approached
the first mexican he seen, which would be Phillip Montano.
Petitioner didn't accuse Mr. Montano of stealing his car, Mr. Montano

57

didn't even fit the discription of the person whom stolen his car, Petitioner assumed Mr. Montano may know the perpatrator whom initially stolen his car, Petitioner told Mr. Montano "when you find out who stole my car, tell them to park my car in one of these hotel parking lots", after Petitioner made that statement, he brandished a gun and fired the gun in a diagnal position directly in the air". Petitioner went on to tell Mr. Asami that, "he was just angry that his car was stolen right under his nose".

During this interview, Petitioner advised Mr. Asami that "he is willing to take a plea deal for negligent discharge of a firearm, and possession of a firearm charge", Petitioner outlined an expected strategy to Mr. Asami, Petitioner assumed that, "the Assault with a firearm charge could be reduced to a negligent discharge of a firearm charge at preliminary", so Petitioner outlined an expected strategy that may compel the court to dismiss the Assault with a firearm charge. Petitioner advised Mr. Asami that, "there is an officer named Ariana Kasparian, she was told by her sergeant, to change the charge from Assault with a firearm charge to a negligent discharge of a firearm charge (see exhibit #10)".

Petitioner advised Mr. Asami that "this case isn't even that serious, nobody wasn't even there to even say they was a victim, when police officers arrived and this officer should be called as a witness because she (Ariana Kasparian) coincide's with Petitioner's story of what took place on the night of March 27, 2018", Mr. Asami nodded his head in agreement, then advised Petitioner of the "many officers that would be

58

testifying on behalf of the gang enhancement charge", Petitioner did not understand "why he was being charged with a gang enhancement charge and the underlying case had nothing to do with any gang activity", Mr. Asami advised Petitioner that, "he has to go and visit another inmate", this was Petitioner's first visit with Mr. Asami.

Petitioner and Mark Asami arrived in Department 61 before the honorable judge Petrucelli for preliminary on August 23, 2018. During this hearing, Petitioner reminded Mr. Asami about his anticipated strategy of "compelling the court to dismiss the Assault with a firearm charge", Petitioner advised Mr. Asami "to call the detective Ariana Kasparian as a witness." Mr. Asami disregarded Petitioner's request and instead, asked another officer (John Mendes) "what Ariana Kasparian wrote in her report", District Attorney Mr. Walters immediately objected (see exhibit #11 page 88-89). Petitioner did not understand why would Mr. Asami take this approach having knowledge that is "blatant hearsay". Petitioner wrote a number of pertinent questionair's he expected Mr. Asami to ask detective John Mendes, Mr. Asami disregarded Petitioner's notes.

Among Petitioner's written questionair's that he wanted Mr. Asami to ask detective John Mendes was, "why didn't you ask Mr. Montano where was the gun aimed, when the single shot was fired? Why didn't wait for officers after the incident?", these questions were essential to Petitioner, because he wanted the record to be furnished as to, "where the gun was pointed when the shot was fired", which the record can reflect, there is "No evidence to show where the gun was pointed when the single

59

round was fired", there were "No trajectory experts to dispute the fact". In any event, Mark Asami also did not object to detective Robert Fry "getting off the witness stand, walked over to where Petitioner was seated, and tattoo check him", allowing the state to investigate their case while the preliminary hearing was in session. Petitioner was unsatisfied with Mr. Asami's performance during this proceeding, Petitioner was held to answer on the above mentioned charges.

September 10, 2018, Petitioner arrived in department 31 before the honorable judge Idiart. Mr. Asami handed Petitioner an additional charge of Attempted Murder and an additional gun enhancement. At that point, Petitioner requested a marsden hearing, Petitioner had concerns with Mr. Asami's performance and his ability to argue mitigating charge's, if Petitioner were to go to trial. Petitioner would like to make a record showing that, he was very open with Mr. Asami, Petitioner just wanted the underlying charges reduced to a "negligent discharge of a firearm" because Petitioner Never tried or intended to shoot at Mr. Montano, nor did he try to kill him, Petitioner just needed an attorney whom would help advocate his defense. Petitioner felt as if, Mr. Asami was "taking control of his defense strategy", and Mr. Asami Never gave Petitioner an "understanding of the Nature of the underlying charges, and what the state has to prove in order for him to get convicted", Petitioner and Mark Asami Client/Attorney relationship was the product of "lack of communication".

Petitioner being a layman of the law, tried to explain to the honorable judge Idiart that, "him and Mr. Asami's views are not compatible in this case", Petitioner further asserted that, "there was a conflict between him and Mr. Asami", Petitioner tried to

explain to the honorable judge Idiart that, "he just needs an attorney that can walk him through complexed issues regarding the underlying case, and Mark Asami was not hands on with his case" (revert to the Marsden hearing), Petitioner even got to the point where he, very openly, stated "there was no attempted murder. There was 16 rounds in the gun, If I were to shoot at this man he would have been dead". This was the same story Petitioner told Mr. Asami, when he first met him (Mark Asami), Petitioner basically begged the court to appoint him new counsel, 5 months before trial even took place. Petitioner's reasons for him wanted new counsel, stemmed from what he witnessed during preliminary, Petitioner's marsden hearing was denied.

Petitioner conversed with Mr. Asami after the marsden hearing, Petitioner didn't want Mr. Asami to develop any ill feelings, so Petitioner attempted to reconcile the client/Attorney relationship and Petitioner believed the conversation went well, Petitioner gave Mr. Asami a few pointers on the crime scene. Petitioner major factor was the Sierra Inn hotel, which was the establishment that stood right behind Mr. Montano when the shot was fired. Petitioner stressed the fact that, "if Mr. Montano is a victim to the shooting, there would be a bullet hole or fragment found, lodged in the back drop, which would be the Sierra Inn hotel". Mr. Asami seemed as if he was interested and enthused about the filing of a 995 motion to dismiss the Attempted Murder and gang enhancement charges. Sometime in October, Mr. Asami came to visit Petitioner and handed him a rough draft of the 995 motion (see exhibit #12).

On or about October 26, 2018, Petitioner arrived in department 71 before the honorable Conklin, Petitioner was greeted

61

by a gentlemen he never even seen before. Petitioner just became aware that Mark Asami allowed a colleague of his "argue a motion that he (Mark Asami) drafted", and Mark Asami did not inform Petitioner that, "he (Mr. Asami) would not be arguing the motion", when Petitioner recieved his transcripts ne realized that, "Mark Asami had that planned out", without Petitioner's knowledge (see exhibit #13). Petitioner's 995 motion was denied, Petitioner believed this gentlemen knew nothing about the facts of the underlying case. Petitioner did not understand the nature of the Attempted Murder or Assault with a Firearm charges, especially the attached gun enhancements which he intepreted to be, "the same meanings, attached on two different charges", Mr. Asami never gave Petitioner legal advice.

The only advice Mark Asami gave Petitioner after ne advised Mr. Asami that, "he is willing to get on the witness stand and tell juror's that I didn't try and shoot Mr. Montano, I was just angry that my car was stolen right under my nose". Mr. Asami advised Petitioner that, "that wouldn't be a good idea, because then you would be admitting to shooting the gun, and being at the scene. The video doesn't show any faces, No need to put yourself there because if the jury don't believe your story, then you would be pretty much stuck with shooting the gun and being there". Petitioner took this as, "Mark Asami seems to feel more comfortable defending Petitioner on the basis of "he was not the shooter"." Petitioner asked Mr. Asami "what should he do?", Mark Asami advised Petitioner, "that is something you would have to figure out."

From the marsden hearing, the 995 motion attorney, coupled

1  with the advice that was conveyed to Petitioner, Mark Asami
2  took little interest in representing Petitioner. Petitioner requested
3  for Mark Asami to investigate Phillip Montano, he will tell you
4  "he was not shot at". Mr. Asami advised Petitioner that, "it
5  isn't his job to look for the victim". Petitioner received a
6  visit from his then girlfriend (Felicia Edwards), during this
7  visit Petitioner read snippets of the search warrant, that
8  only contained pages 1-5. Petitioner immediately acknowledged
9  the firearms listed on page 4 of the search warrant, was
10  apart of an investigation Petitioner remembered reading
11  from the police reports drafted by John Mendes (see visitation
12  exhibit #14 page 439-43).
13      Petitioner conversed with Mr. Asami, about the potential
14  issues that may be contained in the search warrant, sense
15  Petitioner only read snippets of the search warrant from
16  behind the glass window, Petitioner also requested an extra
17  copy of the search warrant during this conversation. Mark Asami
18  advised Petitioner that "he will look into it, and will give Petitioner
19  an extra copy the next visit", sense this meeting took place
20  at a court proceeding, Petitioner and Mark Asami's
21  conversation didn't last long. Petitioner contends that, this
22  was apart of the problem, because Petitioner saw Mr. Asami
23  "more times at a court hearing, then he did at the Fresno
24  County Jail attorney/client visiting rooms". There was always
25  a consistent pattern of "lack of communication" between
26  Petitioner and Mark Asami which materially and prejudicially
27  affected him, because he was going to trial with no
28  clear understanding of the law, and the nature of the

1  underlying offenses, and what the state have to prove.

2      When Petitioner did meet with Mr. Asami, he dropped

3  by to tell Petitioner the Traverse motion was denied, Mr.

4  Asami then handed Petitioner of his drafted motion, and

5  the case law from which he stated was denied (see exhibit #15

6  page 1-7), Petitioner did not recieve a copy of the search warrant

7  and he reminded Mark Asami that, "he needed a copy of

8  the search because he never recieved a copy from Jeremy Snell"

9  (whom initially conflicted off Petitioner's case), Mark Asami

10 nodded his head in agreement, and stated "he has to go an

11 visit another inmate", the visit ended. The next time Petitioner

12 had a visit with Mr. Asami, he was telling him "what happened

13 with regard to his Jail Cell getting raided", Petitioner's

14 attention focused on those issues, and sense Mr. Asami advised

15 Petitioner about the "traverse motion getting denied", he

16 never thought he had another opportunity to challenge it

17 again. (Petitioner was not present at the traverse motion hearing)

18      Another issue that was tangled into the lack of

19 communication department, was the fact that, "Mr. Asami was

20 filing continuance motions that were forcing Petitioner to

21 waive his speedy trial", just accommadate Mr. Asami, and

22 these continuance motions always began on the eve of trial.

23 One continuance motion, was on the day of jury selection

24 January 4, 2019, Department 53 before Houry Sanderson. Petitioner

25 didn't find out Mr. Asami had health issues, until "the

26 day of jury selection", and this is how Mr. Asami and

27 Petitioner formed a client/attorney relationship, was always

28 at a court hearing, either right before a judge walks in

64

the Courtroom, or after the Court proceeding ended, that's
how Petitioner and Mr. Asami usually Communicated, which
never lasted for to long.

During the Court proceeding on January 4, 2019, Mr. Asami
advised Petitioner, that "a woman by the name of Emily will
be representing him", due to existing health issues that Mr. Asami
had at that time. The honorable judge Houry Sanderson scheduled
the trial to February 4, 2019. From January 4, 2019 to February
4, 2019 Petitioner did not recieve any visitation from Emily
or Mark Asami, Petitioner thought he would be represented
by Emily from Ciummo and Associates. It wasn't until on
February 4, 2019, Petitioner was met with Mr. Asami. Petitioner
had family members call the Ciummo and Associates office, trying
to get a hold of Mr. Asami and Emily, because Mr. Asami was
unable to begin trial due to health issues, Petitioner was
under the impression that, "sense he (Mark Asami) gave the
honorable judge Sanderson a medical slip to excuse himself
(Mr. Asami) from the underlying trial, he would also be taking
some time off". That was not the case; Felicia Edwards advised
Petitioner that "she (Ms. Edwards) seen Mr. Asami going to one
Courtroom to the next".

When Petitioner met with Mr. Asami, he asked
him, "how is it that you were unable to start trial, but your
assisting other clients?", Mr. Asami advised Petitioner that,
"he's on light duty, and he's ready to begin trial", the
whole time Petitioner thought "Mr. Asami discharged himself" and
handed the case over to his colleague Emily. The honorable
judge Sanderson stated "she cannot hold this case any

65

1   longer due to upcoming trials on the master Calender", the
2   Case was sent to the presiding judge of Superior Court
3   County of Fresno Department 71 honorable judge Goff. Petitioner
4   and Mr. Asami was then assigned to the honorable judge Skiles
5   but Mr. Asami moved for a disqualification motion pursuant
6   to California Civil Procedure $^§$170.6, the motion was granted and
7   Petitioner and Mr. Asami was assigned to department 52 before
8   the honorable judge Cardoza.
9        During pre trial motions, Petitioner and trial counsel
10   had No communication what so ever, about anything regarding
11   the search warrant. Mark Asami committed a grave error when
12   he ignored the search warrant in it's entirety, if Mark Asami
13   would have conducted a basic pre trial investigation, he
14   would have noticed Judge Cardoza's signature on the front
15   page of the search warrant. Mr. Asami had an ethical
16   responsibilty in assuring that his client's procedural due
17   process rights are protected, this ethical responsibility also
18   includes effective consultation at critical stages of the
19   proceedings. Mr. Asami breached his ethical duties as an
20   attorney, and as a result, Petitioner was denied effective
21   assistance of counsel because he was deprived the guiding
22   hand of competent counsel during pre trial motions.
23        Mark Asami also failed to object to the District
24   Attorney Mr. Walters request to have "Phillip Montano name
25   changed to John Doe", on grounds that the information has
26   Phillip Montano's Government name, not "John Doe". Which is
27   also a confrontational issue that should have been furnished
28   on the record. Also held in the "failure to object" department, Mr. Asami failed

1  object and file a mistrial motion based on District Attorney
2  Mr. Walters opening argument when he stated "Mr. Garrett tried
3  to shoot John Doe in the head, then played the video footage
4  as he (Mr. Walters) made the statement", basically to juror's
5  that "the guy you see in the video is Mr. Garrett". Petitioner
6  contends that, Mr. Walters opening statement was planted seed
7  "narrative" that "flowed" into his (Mr. Walters) closing argument,
8  and Mr. Asami should have objected and filed a mistrial
9  motion. Petitioner asserts that, this prejudicially affected the
10  fundamental fairness of a trial proceeding which denied
11  Petitioner of his Fifth and Fourteenth State and Federal
12  rights to a fair impartial trial.
13          Sense Mr. Asami advised Petitioner that, "it wouldn't be
14  a good idea to admit to being the shooter", Petitioner advised
15  Mr. Asami that, he would be writing some questionair's, so when
16  Petitioner testifies, Mr. Asami would be prepared to ask him
17  the questions, Petitioner wrote". Petitioner and Mr. Asami talked
18  about creating the narrative of "Petitioner wasn't the shooter",
19  Mr. Asami assisted Petitioner to perjure himself (see exhibit #16
20  page 1201-02). Mr. Asami committed a grave error by failing to
21  Object to Mr. Walters machine gun repititive "head shot" testimony.
22  Closing arguments are suppose to give the juror's an understanding
23  on how the attorney's proved their case, Mr. Walters was making
24  sure the "head shot" became a "statement of fact", that
25  only "he" said, there were No Trajectory experts that testified,
26  that makes the "head shot" accusation a "Fact". Mr. Asami
27  should have objected and filed a mistrial motion as a
28  result of the objection.

After Petitioner was found guilty of the underlying charges, Mr. Asami had another opportunity to investigate any potential issues, when he moved for a new trial motion. Instead, Mr. Asami advised Petitioner to "write down all the issues you felt I did wrong, and I will submit your issues with my motion". Petitioner wrote down all the prejudicial errors he believed Mr. Asami created, in hopes of "consulting with new counsel, that would review Petitioner's claims and litigate the merits from an license attorney point of view". Ms. Edwards met with Mr. Asami on or about May 24, 2019, at the Fresno County Courthouse and handed Mr. Asami a copy of Petitioner's contentions, Mr. Asami submitted Petitioner's typed letter with his 2 page motion in Department 52 before the honorable Judge Cardoza, Petitioner was not present at this hearing. (revert to Petitioner's new trial motion)

The most important issue Petitioner has raised in the typed letter, was the "absence of Phillip Montano". Petitioner advised Mr. Asami what actually happened on the night of March 27, 2018, and Petitioner was aware of the overwhelming evidence that was recovered from the search warrant, Petitioner did not want to go to trial, all Petitioner wanted was to take a deal for negligent discharge of a firearm, and possession of a firearm charge. Petitioner has repeatedly asked Mr. Asami to "negotiate a plea deal" because he knew what he did was against the law and Petitioner was willing to take responsibility for his negligent actions. Petitioner was never presented with any plea deals, therefore, Petitioner went to trial in hopes of the jury to either see the charges from Petitioner's perspective and find him guilty of negligent discharge of a firearm, and possession

68

of a firearm or find Petitioner not guilty (which Petitioner knew was highly unlikely, in light of the evidence presented by the state).

In any event, this is why Petitioner requested for Mr. Asami to "locate and investigate Phillip Montano", Mr. Asami advised Petitioner that "it isn't his job to find the victim" (see page 10 of Petitioner's new trial motion), then Mr. Asami blatantly admitted to the court, during Petitioner's marsden hearing, that he fact said that to Petitioner (see exhibit #17 page 2123 lines 13-17). Petitioner contends that, Mark Asami had an ethical obligation, "to investigate and learn the facts" of Petitioner's underlying case, especially when Petitioner told Mr. Asami the truth. Mr. Asami excuses "to not investigate Mr. Montano", did not satisfy Petitioner's guaranteed Constitutional right to the United States Constitution sixth Amendment. Mr. Asami had an established duty to investigate Mr. Montano to see if he would be beneficial to Petitioner's defense. Mr. Asami didn't even know, "if Mr. Montano declined to look at the six pack photo line up, that contained Petitioner amongst the six photo's" (see exhibit #18 page 2125 lines 14-17).

The failure to investigate Mr. Montano had nothing to do with strategy and Mr. Asami made that very clear to the court (see exhibit #17 page 2124 lines 17-23), as he stated "he isn't that bright to think about using the absence of Mr. Montano as a strategy" (quoting lines 22-23 of page 2124). The sole purpose of having Mr. Montano apart of the trial, was for the general purpose of reducing the underlying charges. With respect to this honorable court, "Petitioner didn't care if Mr. Montano pointed him out or

69

not, if he were to get on the witness stand at trial", and Petitioner made that clear to the court (see exhibit #19 page 2132-2134). Petitioner was 100% certain that Mr. Montano would not say "he was shot at, or he almost lost his life", because this never happened. It was the detectives (John Mendes and Brandon Brown) whom asked Mr. Montano trick questions like "when you were SHOT AT did you have any weapons?" emphasizing the "SHOT AT" in there line of questioning.

Because Petitioner advised Mark Asami, of the truth, with regard to the shooting that occured on Parkway March 27, 2018. Petitioner urged trial counsel to call detective Ariana Kasparian as a witness, because this could, "invite the juror's to consider the less included offense", which would be the negligent dis-charge of a firearm charge, Petitioner wanted the juror's to aim for. Petitioner complained of this specific issue in his new trial motion, and the court addressed that specific segment, Mark Asami's excuse for not calling this witness "was because he claims, he was shut down at the preliminary hearing" (see exhibit #20 page 2128 lines 1-20). NOTE: Petitioner is aware that the District Attorney's office has the ultimate decision to file charges, but when the District Attorney overcharge the accused, it's the responsibility of an Attorney to argue mitigating charges, especially in a case where mitigating evidence can support mitigating charges.

In any event, Petitioner contends that, "Mr. Asami was only shut down at Preliminary regarding Detective Ariana Kasparian", was because Mr. Asami asked detective John Mendes "what Ariana Kasparian wrote in her report" (revert to exhibit

70

#11 page 88-89), Mr. Asami's definition of shut down (see exhibit #20 page 2128 line 18-20). So Mr. Asami failed to not only call the detective Ariana kasparian at preliminary, but Mark Asami also failed to call Ariana Kasparian as a witness during the trial proceeding. Petitioner contends that, even as a Layman whom wrote a new trial motion in Layman terms, shown a prima facie showing to warrant new counsel under strickland, in which Petitioner did cite in his new trial motion (see page 13 of new trial motion), Petitioner, unfortunately, was appointed to a judge, whom was "secretly a member of the prosecutions" team, and she (Judge Cardoza) viewed Petitioner's underlying case through a Bias lense.

Mark Asami committed every error that an attorney can make, with regard to practicing law, including, failing to object to the District Attorney Mr. Walters only objection to exclude the only black potential juror in his selective peremptory challenge's. This left Petitioner with 4 caucasian women, 7 hispanics (2 men, 5 women), and 1 Asian women, nobody sitting on the juror panel was Black. Petitioner was also denied a fair trial by a jury of his peers, 10 women and 2 men all of color, were not of his peers. Mr. Asami could have at the very minimum, "make a record of this specific issue", this is why Petitioner had his issue's typed out, so an Attorney can effectively consult with Petitioner and analyze Petitioner's claims through an licensed Attorney point of view. Petitioner was forced into "litigating an Ineffective Assistance of counsel New trial Motion", and he never requested to represent himself.

71

1   Petitioner contends that, he was misguided by trial
2   counsel and the cumalative effect to the numerous grave errors
3   Mark Asami committed, patently produced a manifest miscarriage
4   of justice, because the totality of Mark Asami's representation
5   amounted to a complete denial of effective assistance of
6   counsel that is established in the United States Constitution
7   Sixth Amendment. Petitioner further asserts, he was deprived
8   of the guiding hand of competent counsel, this was a
9   constructive denial of counsel that the courts forced, after
10  Petitioner has had a total of 3 marsden hearings, requesting
11  for new counsel.

12

13  ## POINTS, AND AUTHORITIES

14  The Sixth Amendment right to counsel in a criminal trial
15  includes "The right to the effective assistance of counsel" see
16  McMann v. Richardson, 397 U.S. 759 771 n 14, 90 S.ct.1441, 25
17  L.Ed 2d 763 (1970). This right extends to all critical stages
18  of the criminal process, Iowa v. Tovar, 541 U.S. 77, 80-81, 158
19  L.Ed 2d 209 (2004); also see Summerlin V. Schriro, 427
20  F.3d 623 (CA 9th Cir. 2005). Petitioner and trial counsel's client /
21  attorney relationship was the product of lack of communication.
22  "a defendant's communication with counsel is critical to the
23  attorney's representation" see Geders V. United States, 425 U.S. 80, 91,
24  96 S.ct.1330, 47 L.Ed 2d 592 (1976) (quoting Lakin v. Stine, 44 F.
25  Supp.2d 897 (E.D Mich.1999). Petitioner contends that, he was
26  denied counsel during pre trial motions and at his new trial
27  motion hearing, which are critical stages of the proceedings.
23  Mr. Justice Sutherland rendered his opinion in 1932, "The right to

72

be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated laymen has small and sometimes no skill in the science of law. If charged with a crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rule of evidence. Left without the aid of counsel, he may be put on trial without a poper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence". Powel v. Alabama, 287 U.S. 45, 77 L.Ed 158, 53 S.ct.55 (1932), also see United States V. Cronic, 466 U.S. at 659, 104 S.ct 2039 Prejudice is presumed when a defendant is denied effective assistance during pre trial stage of the criminal proceeding see Fusi v. O'Brien, 621 F.3d 1(CA 1 2010). The cumulative effect of the errors that were committed by trial counsel materially and prejudicially affected Petitioner see Earls v. McCaughtry, 379 F.3d 489 (CA 7 2004). The ninth Circuit court has ruled " When inadequate representation is alleged, the critical factual inquiry ordinarily relates to matters outside the trial record; whether the defendant had a defense which was not presented; whether trial counsel consulted sufficiently with the accused, and adequately investigated the facts and the law; whether the omissions charged to trial counsel resulted from inadequate preparation rather than from unwise choices of trial tactics and

73

Strategy" see Brubaker V. Dickson (9th Cir. 1962) 310 F.2nd 30, 32.
The numerous marsden hearings rose to the level of breakdown
described in Brown V.Craven, 424 F.2d 1166, 1170 (9th Cir.1970); see
also Daniel V. Woodford, 428 F.3d 1181 (9th Cir. 2005). The sixth amend-
ment right to counsel guarantees more than just a warm body to
stand next to the accused during critical stages of the proceedings.
See United States ex rel. Thomas V. O'Leary, 856 F.2d 1011, 1015
(7th Cir. 1988). Mr. Asami's failure to investigate Phillip Montano and learn
the facts was grave error "Counsel has a duty to make reasonable
investigations or to make a reasonable decision that makes
particular investigations unnecessary" see Strickland V. Washington, 104
S.ct.2052 (1984); Soffar V. Dretke, 368 F.3d 441 (CA5th Cir. 2004), see
also United States V. Tucker, 716 F.2d 576 (9th Cir. 1983). Moreover,
trial counsel's multiple grave errors derived from Mr. Asami being
irresponsible and unprepared see e.g. Richter V. Hickman, 578 F.3d
944 (9th Cir. 2009). Mr. Asami's failed efforts to effectively advocate
his client's cause amounted to a complete denial of counsel. See
Gideon V. Wainwright, 372 U.s. 339, 9 L.Ed 2d 799, 83 S.ct. 792 (1963)
Trial Counsel should have told Petitioner "not to perjure himself"
and it's against his ethical duty not to cooperate with
Petitioner's planned perjury see Nix V. White side (1986) 475 U.S.
157, 173, 106 S.ct. 988.

74

1        Argument

2            V.

3    THE CUMULATIVE EFFECT OF THE COMBINED LEGAL

4    ERRORS MATERIALLY AND PREJUDICIALLY AFFECTED

5    PETITIONER AND RENDERED HIS TRIAL FUNDAMENTALLY

6    UNFAIR IN VIOLATION OF THE FOURTEENTH

7    AMENDMENT OF THE UNITED STATES CONSTITUTION

8

9        Petitioner contends that, he was misguided by trial

10   counsel and fighting his case against the District Attorney,

11   and the presiding Judge.

12

13            POINT, AND AUTHORTIES

14       "The United States Supreme Court has clearly established

15   that the combined effect of multiple trial court errors

16   violates due process where it renders the resulting criminal trial

17   fundamentally unfair" Chambers v. Mississippi 410 U.S. at 298, 302-

18   03, 93 S.Ct. 1038, also see Parle v. Runnels, 505 F.3d 922 (CA9th

19   Cir. 2007); United States v. Tory, 52 F.3d 207 (CA 9th Cir. 1995).

20

21

22

23

24

25

26

27

28

75

# CONCLUSIONS OF LAW

The United States Fourteenth Amendment states:

Section 1. "All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property; without due process of law, nor deny to any person within it's jurisdiction the equal protection of laws". Petitioner is deprived of his constitutionally protected right that is particularized by the Fifth Amendment to the United States Constitution, TO WIT:" No person shall be... deprived of life, liberty, or property, without due process of law."

The United States Supreme Court defined due process as long as 1884 as, "any legal proceeding enforced by public authority, whether sanctioned by age and custom, or newly devised in the discretion of the legislative power, in furtherance of the general public good, which regards and preserves these principles of liberty and justice, must be held to be due process of the law." Procedural due process doesn't just mean "notice" and the opportunity for a "full and fair hearing". Procedural due process also means the opportunity to be heard by an unbiased judicial platform. "In the area of criminal law, when the government seeks to deprive the person of his liberty, we afford the greatest procedural safeguards to ensure a fair trial." See Morrissey v. Brewer, 408 U.S. 484, 32 L.Ed. 2d 484, 92 S.Ct. 2539, 2600 (1972)

76

"whether any procedural protections are due depends on the extent to which an individual will be condemned to suffer grievous loss" see Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 168, 71 S.ct. 624, 646, 95 L.Ed. 817 (1951). The concept of substantive due process is rooted in the term "liberty". Personal liberty is more than actual physical restraint and includes the concept of "fundamental right's". The role of substantive due process is to protect "fundamental rights" from arbitrary deprivation by State governments. Rights that have been recognized as fundamental include: The right to marry, to have children, to enjoy privacy, to make health care decisions, the right to have effective assistance of counsel, and a right to a fair impartial and disinterested judge when the government seeks to deprive a person of his personal liberty. Estelle v. Gamble, 429 U.S. 97, 97 S.ct. 285, 50 L.Ed 2d 251 (1976) (state has duty to provide adequate medical care to incarcerated prisoners); Gideon v. Wainwright, 372 U.S. 339, 9 L.Ed 2d 799, 83 S.ct. 792 (1963); Marshall v. Jerrico, Inc., 446 U.S. 238, 64 L.Ed 2d 182, 100 S.ct. 1610 (1980). Petitioner contends, that his personal liberty was taken on the basis of an erroneous, and distorted conception of the facts and the law see Mathews v. Eldridge, 424 U.S. 319, 344, 96 S.ct. 893, 907, 47 L.Ed. 2d 18 (1976). Petitioner is currently illegally restrained of his Personal liberty in violation of the United States Constitution Fourteenth Amendment, Petitioner respectfully request this honorable court to overturn his conviction and release him from CDCR unless the state has new evidence to refile charges. see Jones v. Cunningham (1963) 371 U.S. 236, 243 [9 L.Ed. 2d 285, 83 S.ct. 373]. There is no procedural bar to any of Petitioners claims see contrary to In Reno (2012) 55 C4th 428, 458 n15. Respectfully Submitted.

# PRAYER FOR RELIEF

Petitioner respectfully request this honorable court to vacate his conviction and sentence, and release him from CDCR State prison. The facts of Petitioner's underlying case, proves that the judgment is illegal. Petitioner is illegally restrained of his life, and liberty in violation of the Fifth, and Fourteenth Amendment To Wit: "No person in any state, shall be deprived of life and liberty without due process of law", Petitioner asserts that, he was deprived of his personal liberty without due process of law, that led to an illegal conviction and sentence. Petitioner relies on the scope of the Writ of habeas corpus, to deliever him justice, and relieve him from an illegal judgment. It is respectfully submitted that this honorable court take judicial notice and order the following:

1) Take judicial notice of the appellate record in People v. Garrett F079711;

2) Issue it's writ of habeas corpus or order to show cause to the Attorney General of California to inquire into the lawfulness of Petitioner's Conviction;

3) Order an Evidentiary hearing conducted by a special master or as otherwise required to recieve testimony supporting Petitioner's contentions;

4) After full consideration, set aside Petitioner's conviction, and release him from CDCR State Prison; and

5) Grant Petitioner any further or other relief that is just, in the interest of Justice.

## VERIFICATION
(C.C.P.§ 446 & 2015.5 28 U.S.C. § 1746)

STATE OF CALIFORNIA
COUNTY OF IMPERIAL

I, _Charles Devon Garrett_____ DECLARE UNDER PENALTY OF PERJURY THAT I AM THE
_Petitioner_____ IN THE ABOVE ENTITLED ACTION. I HAVE READ THE FOREGOING
DOCUMENTS AND KNOW THE CONTENTS THEREOF AND THE SAME IS TRUE OF MY OWN
KNOWLEDGE EXCEPT AS TO MATTERS STATED THEREIN UPON INFORMATION AND BELIEF,
AND AS TO THOSE MATTERS, I BELIEVE THEM TO BE TRUE.

EXECUTED THIS _6___ DAY OF _7, 2022_____ AT CENTINELA STATE PRISON, IMPERIAL
CALIFORNIA 92251.

_____ (DECLARANT/PRISONER)
SIGNATURE

## PROOF OF SERVICE BY MAIL
(C.C.P.§ 1013(a) & 2)15.5 U.S.C.§ 1746)

I, _Charles Devon Garrett_ AM A RESIDENT OF CENTINELA STATE PRISON, IN THE COUNTY OF
IMPERIAL, STATE OF CALIFORNIA. I AM OVER EIGHTEEN (18) YEARS OF AGE, AND AM'AM NOT A
PARTY OF THE ABOVE ENTITLED ACTION. MY STATE PRISON ADDRESS IS 2302 BROWN ROAD,
IMPERIAL, CALIFORNIA 92251.

ON _June 7, 2022_____, I SERVED THE FOREGOING: 1original copy of Habeas Corpus, 1extra copy of habeas corpus
, 1extra copy of exhibits , 1 original set of Exhibits that contains; Abstract of
judgment, search warrant, transcript of trial record, police reports, and other court
related documents related to the underlying case.

SET FORTH EXACT TITLE OF DOCUMENT(S) SERVED)

ON THE PARTY(S) HEREIN BY PLACING A TRUE COPY THEREOF, ENCLOSED IN A SEALED
ENVELOPE(S) WITH POSTAGE THEREON FULLY PAID, IN THE UNITED STATES MAIL, IN A DEPOSIT
BOX SO PROVIDED AT THE CENTINELA STATE PRISON, IMPERIAL, CALIFORNIA 92251.

Charles Devon Garrett          Clerk Of United States District Court
P.O. Box 921 C-5 131       TO: 333 West Broadway Suite 420
Imperial, Ca 92251            San Diego, Ca 92101

THERE IS DELIVERY SERVICE BY UNITED STATES MAIL AT THE PLACE SO ADDRESSED AND THERE
IS REGULAR COMMUNICATION BY MAIL BETWEEN THE PLACE OF MAILING AND THE SO
ADDRESSED. I DECLARE UNDER PENALTY OF PERJURY THE FOREGOING IS TRUE AND CORRECT.

DATE _6-7-22_____                    _____
                                         (DECLARANT/PRISONER)

Charles Devon Garrett $\quad$ CDC# BJ9946

P.O. Box 921 C-5 131

Imperial, Ca 92251



RECEIVED

JUN 1 0 2022

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

CENTINELA STATE PRISON
FACILITY C BUILDING 5

Clerk of U.S. District Court

333 West Broadway suite 420

San Diego, Ca 92101